
# IN THE SUPREME COURT OF GUAM

**PEOPLE OF GUAM,**
Plaintiff-Appellee,

**v.**

**RINEXT RIOSEN,**
Defendant-Appellant.

Supreme Court Case No. CRA22-009
Superior Court Case No. CF0298-19

## OPINION

**Cite as: 2023 Guam 23**

Appeal from the Superior Court of Guam
Argued and submitted on August 11, 2023
Hagåtña, Guam

Appearing for Defendant-Appellant:
Peter C. Perez, *Esq*.
Law Office of Peter C. Perez
DNA Bldg.
238 Archbishop Flores St., Ste.802
Hagåtña, GU 96910

Appearing for Plaintiff-Appellee:
Marianne Woloschuk, *Esq*.
Assistant Attorney General
Office of the Attorney General
Prosecution Division
590 S. Marine Corps Dr.
Tamuning, GU 96913



**E-Received**
12/27/2023 5:06:23 PM

BEFORE: ROBERT J. TORRES, Chief Justice; F. PHILIP CARBULLIDO, Associate Justice; and KATHERINE A. MARAMAN, Associate Justice.

**MARAMAN, J.:**

[1]     This is an appeal from a jury verdict convicting Defendant-Appellant Rinext Riosen of three counts of First Degree Criminal Sexual Conduct ("CSC I") and three corresponding Vulnerable Victim Special Allegations for engaging in sexual penetration or intercourse with a victim under the age of fourteen.[1]  This case began when V.F., the twelve-year-old daughter of Riosen's then partner, was discovered to be pregnant and claimed Riosen was the father.  Although Riosen was accused of continuous and repeated criminal sexual conduct that began when V.F. was six years old, the People charged him with only three counts of CSC I—one count for when V.F. became pregnant at eleven years old, one count when she was ten, and one count when she was nine.

[2]     Riosen's appeal first challenges the sufficiency of the evidence supporting his three CSC I convictions.  He makes a novel challenge to the sufficiency of certain DNA evidence underlying one conviction where V.F. has also accused Riosen's brother of sexual abuse.  His other arguments focus on the sufficiency of V.F.'s testimony at trial to support the two remaining CSC I convictions.  He also argues the sentencing enhancement for the Vulnerable Victim Special Allegation violates double jeopardy.

[3]     We affirm.

//

//

---

[1] Riosen was also convicted of three counts of Second Degree Criminal Sexual Conduct ("CSC II"), which the trial court temporarily suspended "for purposes of sentencing and any appeal."  Record on Appeal ("RA"), tab 134 at 3 (Judgment, Aug. 29, 2022).

## I. FACTUAL AND PROCEDURAL BACKGROUND

**[4]**     V.F.'s mother was in a relationship with Riosen, who moved in with them when V.F. was a young child.  There are allegations that Riosen began sexually abusing V.F. when she was six years old.  From that time, Riosen is alleged to have repeatedly sexually abused her on an almost continuous basis.  At some point, Riosen's brother Rimpas Riosen ("Rimpas") also began living in their shared household.  There are allegations that Rimpas also repeatedly abused V.F. sexually, and there was a warrant out for his arrest on CSC charges at the time of Riosen's trial.

**[5]**     Around the time of V.F.'s twelfth birthday, she began showing signs of pregnancy.  In May 2019, V.F. saw a school nurse who, upon performing an examination, suspected she was pregnant. The school promptly called the police, and both V.F. and the school nurse were interviewed.  V.F. told the police that she was "raped" by Riosen, and that's "how [she] got pregnant."  Transcript ("Tr.") at 60 (Jury Trial – Day 2, Dec. 22, 2021).

**[6]**     Two months later, V.F. gave birth to a child, M.G.F.  Child Protective Services ("CPS") subsequently took custody of M.G.F, and the Family Court ordered a paternity test to identify M.G.F.'s biological father.  M.G.F. was adopted by V.F.'s foster family.

**[7]**     Two charges were brought against Riosen; relevant to this appeal is his indictment on Charge One for three counts of CSC I, each enhanced with a Special Allegation of a Vulnerable Victim.  Charge Two, which is not at issue in this appeal, indicted Riosen on three counts of CSC II, also with Vulnerable Victim Special Allegations.

**[8]**     V.F. testified at trial.  On direct examination when asked, "How did you get pregnant with [M.G.F]?", V.F. replied, "I got raped. . . .  By Rinext Riosen."  Tr. at 54 (Jury Trial – Day 2).  After eliciting testimony that V.F. was being abused by Riosen, Rimpas, and others, the People asked how she knew that Riosen caused her pregnancy.  V.F. responded, "Because he did it many times."

*Id.* at 55. The People clarified, asking, "Was he raping you more than one time in 2018?", to which V.F. replied, "Yes." *Id.*

**[9]** Much of the appellate briefs and oral argument focused on V.F.'s testimony, especially her use of the word "rape." Although the parties disagree about the context in which the word was used and the inferences that can be drawn from it, the record shows V.F. also testified that she did "have sex" with Riosen:

> Q        Did you have sex with him after you were pregnant?
>
> A        No.
>
> Q        Okay. How about the year before that in 2017, when you were about ten years old?
>
> A        Yes (spoken softly).
>
> Q        I can't hear you, sorry.
>
> A        Yes (in louder voice).
>
> Q        Okay. Was it more than one time or one time?
>
> A        More than one time.
>
> Q        What about the year before that, 2016, when you were nine?
>
> A        Yes.

*Id.* at 55–56.

**[10]** The prosecution then seems to have switched to a new line of questioning, asking when Riosen "started doing things" to V.F. *Id.* at 56. She responded, "He started when I was six-and-a-half." *Id.* After some clarification, the prosecution then asked, "Did it start off with – with sex things, or was it other stuff?", to which V.F. replied, "Um, other stuff." *Id.*

**[11]** Mokihana Kahele, the CPS social worker assigned to V.F.'s case, testified as well. She unambiguously stated, "I recall her disclosing that she was sexually abused since she was six years

old." Tr. at 51 (Jury Trial – Day 1, Dec. 21, 2021). When asked "did she say when the, I guess *penetration*, started?", she responded, "Six years old." *Id.* (emphasis added). When asked to elaborate, Ms. Kahele stated that "[V.F.] was very descriptive about the sexual encounters with Mr. Rinext Riosen . . . ." *Id.*[2]

[12] As part of their case-in-chief, the People also called an expert witness, Dr. Eric O'Neill, to testify about the paternity of M.G.F. Dr. O'Neill evaluated the genetic profiles of Riosen and M.G.F., authoring a report outlining the estimated probabilities of Riosen's paternity. He concluded that "[Rinext] Riosen is most likely the . . . biological father of this child. The likelihood is eighteen million times more likely that he is the biological father of the child than a random man in the population." Tr. at 16 (Jury Trial – Day 2). When told that the question was not whether a random man in the population was the father, but how much more likely it was that the Defendant was the father rather than his brother Rimpas, Dr. O'Neill testified that he couldn't rule out Rimpas "completely." *Id.* at 18.

[13] Dr. O'Neill also admitted on cross-examination that he was only "able to get a small Chuuk frequency database of fifty-four samples put together from our larger database. The database is much smaller than the number of what we would normally use, normally two hundred, and these Chuuk frequencies therefore have a larger sampling error than one from a larger data set." *Id.* at 25.[3] Despite this, Dr. O'Neill stated that even without Rimpas's DNA profile,[4] the allegations

---

[2] Although this testimony might raise hearsay issues, it was not objected to at trial and is not challenged on appeal; as such, it can be properly considered in a sufficiency challenge. *See People v. Camacho*, 2016 Guam 37 ¶ 45 ("[E]rroneously admitted evidence is properly considered in a challenge to the sufficiency of the evidence."); *see also People v. Mendiola*, 2014 Guam 17 ¶ 23 (affirming sufficiency of evidence on testimony that raised hearsay issues but was not objected to, was heard by the jury, and is part of the record).

[3] Dr. O'Neill's original report was authored under the incorrect assumption that Riosen was of Cherokee descent. Tr. at 24 (Jury Trial – Day 2, Dec. 22, 2021).

[4] No sample was obtained from Rimpas, presumably because he had been effectively avoiding his active arrest warrant.

against him did "not much" change his opinion about Riosen's paternity. *Id.* at 18. He stated there was a "perfect match" across the 21 genetic markers he compared between Riosen and M.G.F., and that although there was a non-zero chance of an uncle matching every marker, "ninety-nine percent of the time would you see . . . [a]t least one mismatch between the child and the uncle." *Id.* at 18–19.

[14]    The jury found Riosen guilty on all charges. He received a sentence of 25 years of imprisonment for each CSC I conviction and 5 years for each Special Allegation, ordered to run consecutively for a total of 90 years. Riosen timely appealed.

## II.  JURISDICTION

[15]    We have jurisdiction over an appeal from a final judgment of conviction under 48 U.S.C.A. § 1424-1(a)(2) (Westlaw through Pub. L. 118-23 (2023)); 7 GCA §§ 3107 and 3108(a) (2005); and 8 GCA §§ 130.10 and 130.15(a) (2005).

## III.  STANDARD OF REVIEW

[16]    "When a defendant raises the sufficiency of the evidence by a motion for judgment of acquittal, the court reviews the trial court's denial of the motion *de novo*." *People v. Pinaula*, 2023 Guam 2 ¶ 58 (citing *People v. Wia*, 2020 Guam 17 ¶ 9). "Our review of evidentiary sufficiency is *de novo*, but it is 'highly deferential' to the findings of the trier of fact." *People v. Rachulap*, 2022 Guam 9 ¶ 12 (quoting *People v. Song*, 2021 Guam 14 ¶ 18). "'[W]e review the evidence in the light most favorable to the People and determine whether any rational trier of fact could have found the essential elements of the crime[] beyond a reasonable doubt,' affording to the People 'the strongest legitimate view of the evidence and all reasonable inferences that may be drawn therefrom.'" *Id.* (first alteration in original) (quoting *Wia*, 2020 Guam 17 ¶ 35). "We measure

only the 'existence or non-existence of evidence, not its weight.'" *Id.* (quoting *People v. Martin*, 2018 Guam 7 ¶ 23).

[17]    "Alleged violations of the Double Jeopardy Clause of the Fifth Amendment of the U.S. Constitution are reviewed *de novo*." *People v. McKinney*, 2018 Guam 10 ¶ 9. A double jeopardy claim requires us to discern legislative intent under the applicable charging statutes, which we review *de novo*. *People v. Reselap*, 2022 Guam 2 ¶¶ 13–14.

## IV.  ANALYSIS

### A.  Sufficiency of the Evidence

[18]    American law rests on this bedrock: A criminal defendant has the right to acquittal if the prosecution fails to prove beyond a reasonable doubt his guilt on every element of the charged crime. *See People v. Perry*, 2009 Guam 4 ¶ 33. Once a guilty verdict is rendered, the defendant's prior presumption of innocence is replaced with a presumption of guilt. *People v. Moses*, 2022 Guam 17 ¶ 17; *People v. George*, 2012 Guam 22 ¶ 50 (per curiam). Courts do not assess witness credibility, resolve conflicts in the evidence, or weigh evidence; these roles are solely within the domain of the jury. *People v. Acosta*, 2022 Guam 11 ¶ 49; *People v. Song*, 2012 Guam 21 ¶ 29.

#### 1.  Riosen's conviction on Charge One, Count One is supported by sufficient evidence, and his paternity is irrelevant

[19]    Riosen claims there is insufficient evidence on the element of sexual penetration to support his conviction on Count One of CSC I because "V.F. did not testify to sexual penetration or sexual intercourse" but rather to unspecified "rapes." Appellant's Br. at 17–18 (Jan. 24, 2023). He also contends that "[w]hile there was evidence of pregnancy and delivery of a child," because the evidence permitted two possible conclusions about paternity, the jury was required to conclude that Riosen was not the father of M.G.F. *Id.* at 21.

[20]     "A sufficiency of the evidence analysis evaluates whether there is enough direct or circumstantial evidence presented so *reasonable inferences* may be drawn supporting each element of the crime charged."  *Pinaula*, 2023 Guam 2 ¶ 62 (emphasis added).  "[E]vidence sufficient to support a guilty verdict may be entirely circumstantial, and the factfinder is free to choose among reasonable interpretations of the evidence."  *People v. Perez*, 2021 Guam 18 ¶ 28 (alteration in original) (quoting *United States v. Boskic*, 545 F.3d 69, 85 (1st Cir. 2008)).

[21]     The element of sexual penetration is defined as "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body, but emission of semen is not required."  9 GCA § 25.10(a)(10) (2005).  It is well settled that "the testimony of a sexual assault victim does not need to be corroborated, and a victim's testimony alone can support a criminal sexual conduct conviction."  *People v. Bosi*, 2022 Guam 15 ¶ 20 (quoting *People v. Perez*, 2015 Guam 10 ¶ 36).  "While evidence of sexual penetration must be present, there are *no magic words* that need to be stated at trial.  The element of penetration may be inferred based on the totality of evidence."  *People v. Enriquez*, 2014 Guam 11 ¶ 19 (emphasis added).  "Although specificity when testifying is always preferable, a general description of the events does not necessarily defeat any possibility that penetration occurred.  It is not reasonable to expect a fourteen-year-old victim to speak as knowledgeably about her anatomical structure as an adult."  *People v. Mendiola*, 2014 Guam 17 ¶ 22.

[22]     We reject Riosen's argument because it recycles the same meritless proposition we have rejected before—the victim was not required to say the magic words "penetration" or "intercourse" at trial.  *See Enriquez*, 2014 Guam 11 ¶ 19; *Mendiola*, 2014 Guam 17 ¶ 21; *People v. Aguon*, 2020 Guam 24 ¶ 17.  "The term 'rape' is the common English word for the conduct charged in Guam

as 'first-degree criminal sexual conduct.'" *Moses*, 2022 Guam 17 ¶ 60 (quoting *People v. Torre*, 68 F.3d 1177, 1179 (9th Cir. 1995)). Although it is conceivable that a victim's use of the word "rape" may not establish penetration in every case, in the context of the rest of V.F.'s testimony, it carries a strong implication that intercourse occurred. *See Haney v. State*, 242 S.E.2d 757, 757–58 (Ga. Ct. App. 1978) ("Although the appellant urges that the victim's use of the word 'rape' did not clearly establish penetration as required under [the statute], we hold that in the context of the rest of her testimony the statement [he 'laid me down on the back seat and raped me'] carried with it a rather strong implication that intercourse had in fact occurred."); *see also Clay v. State*, 518 S.W.2d 550, 552 (Tex. Crim. App. 1975) ("We conclude that the prosecutrix' testimony that appellant was the 'man that raped me' was sufficient to prove penetration."). *But see State v. Pember*, No. 19AP-880, 2021-Ohio-2939, at ¶¶ 35–36 (observing penetration can be inferred from victim's testimony that "he raped me," but such testimony fails to describe events with sufficient clarity to establish offender's guilt beyond reasonable doubt).

[23]     The first time V.F. used the word "rape" in her testimony was in response to the question "How did you get pregnant with [M.G.F.]?", to which she unambiguously stated, "I got raped." Tr. at 54 (Jury Trial – Day 2). The prosecution continued, "You said that Rinext was the one that was raping you when you got pregnant. How do you know that?", to which V.F. responded, "Because he did it many times." *Id.* at 55. There is no ambiguity in this testimony that V.F.'s use of the word "rape" carries a strong implication of sexual intercourse—Riosen's penis penetrating V.F.'s vagina, sometimes with the emission of semen.

[24]     Riosen's argument about paternity also lacks merit. The jury was not required to find beyond a reasonable doubt that Riosen was the father of M.G.F. because causing pregnancy is neither an element of CSC I nor a special allegation. *Compare* 9 GCA § 25.15 (as amended by

Guam Pub. L. 32-012:2 (Apr. 11, 2013)), *and* 9 GCA § 80.37.3 (added by P.L. 32-143:2 (Apr. 28, 2014)), *with State v. Juarez-Garcia*, No. 70643-8-I, 184 Wash. App. 1026, at *1 n.2 (2014) (unpublished) ("A trial court may impose an exceptional sentence where a jury finds beyond a reasonable doubt that '[t]he offense resulted in the pregnancy of a child victim of rape.'" (quoting Wash. Rev. Code Ann. § 9.94A.535(3)(i) (West 2013))). As a victim's testimony need not be corroborated, it is irrelevant whether V.F. is mistaken in her belief that her pregnancy was caused by the multiple instances of sexual intercourse with Riosen she testified occurred in 2018. Even if we accepted the unlikely proposition that Riosen is not the biological father of M.G.F., this does not negate V.F.'s testimony that he engaged in penetrative sex with her multiple times in 2018.

[25]     Riosen was not on trial for fathering a child; with regards to Count One, he was tried and convicted for committing sexual penetration against a child under the age of fourteen. As there is sufficient evidence of sexual penetration on Count One, we affirm this conviction.

### 2.  The evidence adequately supports two additional acts of sexual penetration near the indictment's dates

[26]     Riosen seems to argue that there is insufficient evidence he penetrated V.F. in 2016 or 2017. *See* Appellant's Br. at 16. But time is not an essential element of CSC I. *People v. Sablan*, 2023 Guam 4 ¶ 51. Thus, "[p]roof of any date before the return of the indictment and within the statute of limitations is sufficient." *Id.* (alteration in original) (quoting *People v. Taitano*, 2015 Guam 33 ¶ 16). "[T]he People need only demonstrate that the crime occurred on a date reasonably near the one alleged in the indictment." *Taitano*, 2015 Guam 33 ¶ 16. For Charge One, Counts Two and Three, the prosecution needed to prove two "separate instances" of sexual penetration that occurred reasonably near the dates alleged in the indictment. *See People v. Callahan*, 2022 Guam 13 ¶¶ 22–27 (holding there was sufficient evidence to support two counts of CSC I where victim testified that vaginal penetration and oral sex occurred "multiple times" at "both houses"

because "a reasonable jury could find there was at least one instance of vaginal penetration at the house on Andersen Air Force Base and at the house in Yigo"); *see also Martin*, 2018 Guam 7 ¶¶ 20–21 (requiring prosecution to prove "two distinct acts" of sexual penetration "separated in time").

[27]     The prosecution's decision to charge Riosen with three counts that were each tied to the age of V.F. seems to have been an attempt to bring multiple counts that could be proven as "separate instances" where the defendant was accused of years of continuing and repeated criminal sexual conduct.[5]  This strategy was consistent with our holding in *People v. Callahan* that in cases of repeat sexual abuse of a child, a "separate instance" of penetration can be shown by tying each count to a salient fact in the victim's life.  *See* 2022 Guam 13 ¶ 26; *see also People v. Campbell*, 2006 Guam 14 ¶ 27 ("[A] conviction may be upheld as long as the child victim is able to testify as to a general time period and, more importantly, the specific sexual acts which occurred . . . ."); *State v. Hodgdon*, 2017 ME 122, ¶ 20, 164 A.3d 959, 964-65 (holding that because some counts required jury to find certain offenses "occurred before the victim's fourteenth birthday" and others occurred after, "the dates in the indictment together with her birthday provide clear guideposts upon which the jury could assess the evidence presented, despite the victim's testimony that the sexual acts occurred over a long period of time"); *State v. Bershon*, 983 N.W.2d 490, 499 (Neb.

---

[5] We recognize that a single count of CSC I may seem unsatisfactory when a defendant is accused of years of constant abuse; serial abusers should not be afforded a defense that because their conduct was so pervasive, it is too difficult to prove any specific act of penetration.  However, we also emphasize that "a prosecutor has a duty 'to charge only those offenses she believes she can prove beyond a reasonable doubt.'"  *People v. Lopez*, 462 P.3d 499, 512 (Cal. 2020).  We echo the admonition of the Utah Court of Appeals:

> We recognize that testifying about a sexual assault is traumatic for the victim.  But the State has the burden of "proving by evidence every essential element" of the charged crime.  We urge prosecutors to adduce specific testimony regarding each and every element of such crimes to ensure that a jury's guilty verdict rests not on speculation but on clear evidence sufficient to find beyond a reasonable doubt that the defendant committed the crime charged.  *Cf. People v. Paz*, 217 Cal. Rptr. 3d 212, 223 (Ct. App. 2017) ("We caution prosecutors not to use vague, euphemistic language and to ask follow-up questions where necessary.").

*State v. Patterson*, 2017 UT App 194, ¶ 12 n.2, 407 P.3d 1002 (first and second citations omitted).

2023) ("[Defendant] highlights inconsistencies in [the victim]'s testimony. He notes that she gave different definitions of what she considered 'a lot' and that on cross-examination, when she was asked specific questions as to whether an incident occurred in each year from 2006 through 2017, she responded that she did not remember. We acknowledge these inconsistencies in [the victim]'s testimony, but as set forth above, [she] testified that the sexual conduct occurred 'throughout the years from 2006 to 2018' and that 'it happened every year.' Thus, there was evidence from which the jury could find that sexual conduct occurred in each year from 2006 through 2018, and any inconsistency goes to the credibility of [the victim]'s testimony.").

[28]     We turn now to whether there was sufficient evidence of two separate instances of sexual penetration that occurred reasonably near the dates alleged in the indictment to sustain Riosen's convictions on Counts Two and Three. When ruling on a challenge to the sufficiency of the evidence, this court is "concerned with the mere existence or nonexistence of evidence, not its weight." *Perez*, 2021 Guam 18 ¶ 28. It is the jury's role "to draw reasonable inferences from basic facts to ultimate facts," *People v. Flores*, 2009 Guam 22 ¶ 70 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)), and as such, "[j]urors may make reasonable inferences, apply common sense, and consider matters of common knowledge," *Perez*, 2021 Guam 18 ¶ 28.

[29]     Our sufficiency-of-the-evidence test is derived from the United States Supreme Court's landmark decision in *Jackson v. Virginia*, 443 U.S. 307 (1979). *People v. Cruz*, 1998 Guam 18 ¶ 9 (citing *Jackson*, 443 U.S. at 319). "*Jackson* . . . establishes a two-step inquiry for considering a challenge to a conviction based on sufficiency of the evidence. First, a reviewing court must consider the evidence presented at trial in the light most favorable to the prosecution." *United States v. Nevils*, 598 F.3d 1158, 1164 (9th Cir. 2010) (citing *Jackson*, 443 U.S. at 319). "*Jackson* leaves juries broad discretion in deciding what inferences to draw from the evidence presented at

trial, requiring only that jurors 'draw reasonable inferences from basic facts to ultimate facts.'" *Coleman v. Johnson*, 566 U.S. 650, 655 (2012) (per curiam) (quoting *Jackson*, 443 U.S. at 319).

[30]     This deferential standard does not permit appellate courts to engage in "fine-grained factual parsing" because it "unduly impinge[s] on the jury's role as factfinder." *Id.* An appellate court "may not usurp the role of the finder of fact by considering how it would have resolved the conflicts, made the inferences, or considered the evidence at trial." *Nevils*, 598 F.3d at 1164. "Rather, when 'faced with a record of historical facts that supports conflicting inferences' a reviewing court 'must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *Id.* (quoting *Jackson*, 443 U.S. at 326); *see also, e.g.*, *Myers v. State*, 27 N.E.3d 1069, 1078 (Ind. 2015) ("It is not within the purview of this Court to reverse the jury's verdict simply because a 'more reasonable' inference could be made. Rather, the fact that a conflicting inference can be made is controlling." (footnote and citation omitted)).

[31]     "Second, after viewing the evidence in the light most favorable to the prosecution, the reviewing court must determine whether this evidence, so viewed, is adequate to allow '*any* rational trier of fact [to find] the essential elements of the crime beyond a reasonable doubt.'" *Nevils*, 598 F.3d at 1164 (alterations in original) (quoting *Jackson*, 443 U.S. at 319). As the Ninth Circuit has articulated:

> Because the government does not need to rebut all reasonable interpretations of the evidence that would establish the defendant's innocence, or "rule out every hypothesis except that of guilt beyond a reasonable doubt" at the first step of *Jackson*, a reviewing court may not ask whether a finder of fact could have construed the evidence produced at trial to support acquittal. Only after we have construed all the evidence at trial in favor of the prosecution do we take the second step, and determine whether the evidence at trial, including any evidence of innocence, could allow *any* rational trier of fact to find the essential elements of the crime beyond a reasonable doubt.

*Id.* at 1164–65 (footnote and citations omitted).

[32]    A reading of V.F.'s testimony in a light most favorable to the prosecution is: (1) yes, V.F. did have sex more than one time with Rinext Riosen in 2017, when she was ten years old, and (2) yes, V.F. did have sex with Rinext Riosen in 2016, when she was nine. *See* Tr. at 55–56 (Jury Trial – Day 2). The question then becomes whether it was reasonable to infer from the testimony of "having sex" that "penetration" or "sexual intercourse" occurred. Other courts agree such an inference is reasonable: "One can reasonably infer that to have sex, there is penetration of the female sex organ." *Smith v. State*, 60 S.W.3d 885, 890 (Tex. Ct. App. 2001); *see also People v. Torres*, 2015 IL App (1st) 132206-U, ¶ 25 (unpublished) ("The use of the word 'sex' to denote an act of penetration is ubiquitous in common usage. The trial court could reasonably infer, beyond a reasonable doubt, that when defendant stated that he wished to 'have sex' he meant he wished to commit an act of penetration.").

[33]    The unobjected-to testimony of Ms. Kahele clarifies whatever ambiguities Riosen claims on appeal about the meaning of "it," "he," "sex things," and "other stuff." Appellant's Br. at 16–17. Based on the jury verdict, it must be assumed that the jury credited Kahele's testimony that V.F. "was very descriptive about the sexual encounters with Mr. Rinext Riosen" and that "penetration started" when V.F. was six years old. Tr. at 51 (Jury Trial – Day 1); *see Nevils*, 598 F.3d at 1170 (stating that where jury was entitled to make credibility determination, court must assume it did so in a way that supports their verdict).

[34]    The "logical leap" made by the jury in inferring sexual penetration from the totality of the evidence was minimal. *Cf. Perez,* 2021 Guam 18 ¶ 31 ("[A] logical leap by the factfinders would be based on 'suspicion alone, or on imagination, speculation, supposition, surmise, conjecture, or guess work.'" (quoting *People v. Davis*, 303 P.3d 1179, 1183 (Cal. 2013))). Application of

*Jackson*'s second step is straightforward. A rational trier of fact could find the element of sexual penetration beyond a reasonable doubt because it is reasonable to infer that there was penetration when Riosen had sex with V.F. many times in 2017. Under *Callahan*, this was a separate instance of sexual penetration than the "rape" referred to in 2018. The record also supports a finding of a third separate instance of sexual penetration because V.F. also testified to having sex with Riosen in 2016, and a rational juror could have found penetration based on this testimony because of the same reasonable inference. *See People v. Wesen*, 2022 Guam 18 ¶ 38 n.5 ("[The victim] testified that [defendant] had sex with her at least once during each of the time frames charged in the indictment . . . . As the 'direct evidence of one witness who is entitled to full credit is sufficient proof of any fact,' [the victim]'s testimony about the charged acts was legally sufficient." (emphasis and internal citations omitted)).

[35] We reject Riosen's invitation to engage in "fine-grained factual parsing" of V.F.'s testimony because it "unduly impinge[s] on the jury's role as factfinder." *See Coleman*, 566 U.S. at 655. Review of the evidence in its entirety suggests that the jury did not act irrationally. *See Mendiola*, 2014 Guam 17 ¶ 27. V.F.'s testimony, along with Ms. Kahele's testimony, gave the trier of fact a complete description of the years of abuse Riosen subjected V.F. to, including "raping" her during each year alleged in the indictment. *See id.*; *see also Wesen*, 2022 Guam 18 ¶ 38 n.5. Although V.F. did not explicitly testify that Riosen "penetrated" her, the jury may consider all evidence to infer sexual penetration. *See Mendiola*, 2014 Guam 17 ¶ 27. There were no "magic words" she needed to recite at trial. *See id.* ¶ 21 (quoting *Enriquez*, 2014 Guam 11 ¶ 19). Riosen's claim that the record lacks evidence showing sexual penetration is incorrect. *See id.* ¶ 28. "[T]he record contains multiple testimonial statements from which, when viewed as a whole, a reasonable inference of penetration may be drawn." *Id.* Viewing the evidence in a light most favorable to the

People, a rational trier of fact could have found sexual penetration, an essential element of CSC I, beyond a reasonable doubt.

[36]    Riosen's convictions on Charge One, Counts Two and Three are affirmed.

## B. Double Jeopardy

[37]    Riosen argues that the Vulnerable Victim Special Allegations attached to his CSC I convictions under 9 GCA § 25.15 violate the Double Jeopardy Clause of the Fifth Amendment. Appellant's Br. at 22–25.  He claims "the two statutes in effect punish the same offense. . . . based upon sexual penetration and the victim's age being below 14."  Appellant's Br. at 24.  Although he acknowledges that the legislature may authorize multiple punishments, he claims "it is unclear whether the legislature has expressly authorized multiple punishments under the relevant statutes." *Id.*  He urges this court to apply the *Blockburger* same-elements test to vacate his convictions.  *Id.* at 23.

[38]    "The Double Jeopardy Clause of the Fifth Amendment, made applicable to Guam by the Organic Act . . . , provides that no person shall 'be subject for the same offence to be twice put in jeopardy of life or limb.'"  *Reselap*, 2022 Guam 2 ¶ 18 (quoting *People v. Afaisen*, 2016 Guam 31 ¶ 12).  The Double Jeopardy Clause protects against successive criminal punishments for the same crime.  *Id.* (quoting *People v. San Nicolas*, 2001 Guam 4 ¶ 8).  As the Ninth Circuit explains:

> [T]he Supreme Court made clear that the protection against multiple punishments for the same offense [does] not necessarily preclude cumulative punishments in a single prosecution.  The key to determining whether multiple charges and punishments violate double jeopardy is legislative intent.  When the legislature intends to impose multiple punishments, double jeopardy is not invoked.

*Plascencia v. Alameida*, 467 F.3d 1190, 1204 (9th Cir. 2006) (citing *Missouri v. Hunter*, 459 U.S. 359, 366, 68–69 (1983)).  When the legislature has specifically authorized cumulative punishment

under two statutes, it is unnecessary to ask whether those two statutes proscribed the same conduct under the *Blockburger* test. *People v. Torres*, 2008 Guam 26 ¶ 40 (citing *Hunter*, 459 U.S. 359).

[39] The sentencing enhancement Riosen challenges is found in 9 GCA § 80.37.3, which states: "Whoever commits or attempts to commit upon a vulnerable victim, a violent felony as defined in 9 GCA, § 80.70 . . . shall, in addition to the sentence imposed for the commission of such felony, be imprisoned for a term of not less than five years nor more than twenty-five years . . . ." 9 GCA § 80.37.3(a) (emphasis omitted). A vulnerable victim is defined to include "a child who is thirteen years old or younger . . . ." 9 GCA § 80.37.3(c)(2). First degree criminal sexual conduct is listed as a violent felony under 9 GCA § 80.70(a)(2)(F).[6]

[40] Riosen argues that under the Fifth Amendment, he should not have received enhanced punishment for committing CSC I against a child younger than thirteen when the underlying felony, as charged against him, already included the age of the victim as an element of the offense. *See* Appellant's Br. at 21–25. The Guam Legislature could have explicitly excluded from the reach of 9 GCA § 80.37.3 any of the seven circumstances that make sexual penetration CSC I, but it chose not to do so. *See People v. Moses*, 2016 Guam 17 ¶ 14. We find the meaning of 9 GCA § 80.37.3 to be plain and clear on its face, applying to all those who commit CSC I against a child victim younger than thirteen. The Legislature intended for the special allegation to apply, even where the underlying felony included the victim's age as an element. *See id.* "Since legislative intent is not ambiguous here, there is no need to apply the *Blockburger* analysis." *Id.* ¶ 16.

[41] Riosen's convictions for CSC I under 9 GCA § 25.15(a)(1) and for the Vulnerable Victim Special Allegations under 9 GCA § 80.37.3 do not violate double jeopardy. *See id.* ¶ 15.

---

[6] Although 9 GCA § 80.70(a)(2) defines "violent crime[s]," CSC I "is a felony in the first degree," 9 GCA § 25.15(b).

## V. CONCLUSION

**[42]**     The Superior Court did not err when it denied Riosen's motion for judgment of acquittal because there was sufficient evidence of sexual penetration to sustain the jury's guilty verdict on each count of CSC I.  And the Vulnerable Victim Special Allegations do not violate double jeopardy.  The judgment is **AFFIRMED**.


| /s/ | /s/ |
|:---:|:---:|
| F. PHILIP CARBULLIDO | KATHERINE A. MARAMAN |
| Associate Justice | Associate Justice |


/s/
ROBERT J. TORRES
Chief Justice