
Filed
Supreme Court of Guam, Clerk of Court

# IN THE SUPREME COURT OF GUAM

## PEOPLE OF GUAM,
Plaintiff-Appellee,

**v.**

## JESSE JUNIOR QUINTANILLA PINAULA
## (aka Jesse Quintanilla Pinaula Jr.),
Defendant-Appellant.

Supreme Court Case No. CRA23-014
Superior Court Case No. CF0185-23

## OPINION

**Cite as: 2025 Guam 6**

Appeal from the Superior Court of Guam
Argued and submitted on July 16, 2024
Hagåtña, Guam

Appearing for Defendant-Appellant:
Shannon Taitano, *Esq.*
Camacho & Taitano LLP
204 Hesler Place, Ste. 203B
Hagåtña, GU 96910

Appearing for Plaintiff-Appellee:
Nathan M. Tennyson, *Esq.*
Acting Deputy Attorney General (former)
Office of the Attorney General
590 S. Marine Corps Dr., Ste. 801
Tamuning, GU 96913


E-Received
10/10/2025 10:45:50 AM

BEFORE: ROBERT J. TORRES, Chief Justice; F. PHILIP CARBULLIDO, Associate Justice; and KATHERINE A. MARAMAN, Associate Justice.

**MARAMAN, J.:**

**[1]**     Defendant-Appellant Jesse Junior Quintanilla Pinaula appeals his felony convictions of Possession of a Firearm Without a Firearm Identification Card and Possession of a Schedule II Controlled Substance.  Pinaula argues the trial court committed reversible error when, over his objection, the court permitted the government to introduce evidence of his pending criminal matter and pretrial release status to argue that he knowingly possessed a firearm and methamphetamine.[1] We find the trial court abused its discretion in failing to explicitly consider on the record whether the evidence should have been excluded under Guam Rule of Evidence 403 and allowing the prosecution to improperly elicit and use prejudicial propensity evidence of Pinaula's pretrial release status and other criminal case.  We vacate the judgment of conviction for these reasons and decline to reach the other allegations of error.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual Background

**[2]**     Guam police responded to a report of a shooting involving a white Mazda RX-8 and located a matching vehicle at a Mobil gas station in Mangilao.  An officer testified that he observed Pinaula exiting the driver's side of the vehicle and spoke with Pinaula on his way into the gas station.  The officer said he asked Pinaula where he had come from, and Pinaula stated that he had come from the street behind the Mangilao Payless.  Pinaula then claimed he urgently needed to use the bathroom, and their conversation ended.  When officers approached the car, they found Keilani Mariano, Pinaula's ex-girlfriend, inside.  Mariano testified that Pinaula was giving her a ride.

---

[1] Pinaula also challenges the admission of other evidence that he did not object to at trial.  Because we find his preserved objection sufficient for reversal, we do not address the other evidence he challenges.

During a search of the vehicle, officers discovered a glass pipe with methamphetamine residue and a revolver with five unexpended rounds, amid other debris. No DNA testing was ordered on the gun. Mariano testified that none of the seized items belonged to her except for her bags and guitar in the back seat.

**B. Procedural Background**

[3] On the date of Pinaula's interaction with police in Mangilao, Pinaula was on pretrial release in Superior Court Case No. CF0588-20. Pinaula was later indicted on three charges for the incident on April 14, 2021: (1) Possession of a Firearm Without a Firearm Identification Card (As a Third-Degree Felony), (2) Possession of an Unregistered Firearm (As a Third-Degree Felony), and (3) Possession of a Schedule II Controlled Substance (As a Third-Degree Felony). All three charges in the indictment contained the notice of commission of a felony while on felony release.

[4] Before jury selection began, the parties agreed to bifurcate the trial to first address the three charges and then to address the felony-on-felony release afterward. The trial court instructed the prosecution not to raise Pinaula's pretrial release status. After the People rested their case, the trial court granted Pinaula's motion for judgment of acquittal as to the Second Charge of Possession of an Unregistered Firearm (As a Third Degree Felony).

[5] On direct examination, Pinaula testified that he left the gas station because of earlier negative encounters with police officers, stating, "I have bad experience [sic] with police officers," and "I just feel like they have something out for me." Transcript ("Tr.") at 37 (Jury Trial, Day 3, May 19, 2023). He described an incident where his home was raided by police who allegedly damaged property, including breaking televisions, mishandling personal items, and "pouring acetone and glue all over our food." *Id.* Pinaula explained, "I just didn't feel safe at the time." *Id.*

When questioned about the gun and glass pipe police found in the car, he testified that neither was his, explaining, "I just honestly borrowed the car just to give her a ride." *Id.* at 38.

[6]     On cross-examination, the prosecutor asked, "Now, you said that you left because you've had bad experiences with police officers, is that correct?" *Id.* at 42. Pinaula responded, "Yes. I didn't feel safe." *Id.* The prosecutor then asked Pinaula specifically "how many times [he had] experiences with police officers" and "how many times" he had "been arrested by the police previously." *Id.* at 42–43. Pinaula's counsel did not object to either question. *Id.* Pinaula responded that he had "[a] couple" of experiences with police officers. *Id.* at 42. After testifying that he could not recall how many times he had been arrested, the prosecutor asked several times for Pinaula to "includ[e] marshals," "estimate," and whether it was "between ten and twenty times" or "more than twenty times" that Pinaula had "been arrested by police and marshals?" *Id.* at 42–43. Pinaula responded, "More than once." *Id.* at 43. The prosecutor then asked, "[I]sn't it the case that actually you were afraid you would be arrested because . . . you have an open case in CF588-20?" and Pinaula's counsel objected. *Id.* at 44.

[7]     Despite the parties agreeing to bifurcate the trial and the court instructing the prosecution not to raise Pinaula's pretrial release status, the trial court allowed the People's questions and explained:

> I don't mind certainly the case that puts that condition on him. I don't think we have to delve into his entire history all twenty times. . . . [Y]ou're not doing that. But if you're going to be specific to that as to the why he may not want to with this or that, that's fine.

Tr. at 45 (Jury Trial, Day 3). The trial court did not conduct any explicit, on-the-record analysis under Guam Rule of Evidence ("GRE") 403. Pinaula responded and confirmed he had an open case (CF0588-20) at the time he left the scene and at the time he testified at trial.

**[8]** The jury found Pinaula guilty of the First Charge of Possession of a Firearm Without a Firearm Identification Card (As a Third-Degree Felony) and the Third Charge of Possession of a Schedule II Controlled Substance (As a Third-Degree Felony). After the verdict, Pinaula stipulated to the Notice: Commission of a Felony While on Felony Release attached to both charges. Pinaula timely appealed.

## II. JURISDICTION

**[9]** This court has jurisdiction over a criminal appeal from a final judgment of conviction. 48 U.S.C.A. § 1424-1(a)(2) (Westlaw through Pub. L. 119-36 (2025)); 7 GCA §§ 3107(b), 3108(a) (2005); 8 GCA §§ 130.10, 130.15(a) (2005).

## III. STANDARD OF REVIEW

**[10]** Generally, when a defendant has made a proper objection to the introduction of evidence, this court will review the admission of this evidence for an abuse of discretion. *People v. Wesen*, 2022 Guam 18 ¶ 13. However, where the trial court "fails to engage in necessary Rule 403 balancing, we . . . review *de novo*." *United States v. Wells*, 879 F.3d 900, 914 (9th Cir. 2018). If the trial court has committed an evidentiary error over an objection, "the proper standard for evaluating whether reversal is required is the harmless error standard." *People v. Bosi*, 2022 Guam 15 ¶ 15 (quoting *People v. De Soto*, 2016 Guam 12 ¶ 19). The test for harmless error for constitutional error is "whether it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained," *People v. Quitugua*, 2015 Guam 27 ¶ 53 (quoting *People v. Roten*, 2012 Guam 3 ¶ 41), and for a non-constitutional error whether "it is more probable than not that the error did not materially affect the verdict," *People v. Sharpe*, 2024 Guam 12 ¶ 14 (quoting *People v. Callahan*, 2022 Guam 13 ¶ 17).

[11] "Our review of evidentiary sufficiency is *de novo*, but it is 'highly deferential' to the findings of the trier of fact." *People v. Soram*, 2024 Guam 10 ¶ 10 (quoting *People v. Riosen*, 2023 Guam 23 ¶ 16). "'[W]e review the evidence in the light most favorable to the People and determine whether any rational trier of fact could have found the essential elements of the crime[] beyond a reasonable doubt,' affording to the People 'the strongest legitimate view of the evidence and all reasonable inferences that may be drawn therefrom.'" *Riosen*, 2023 Guam 23 ¶ 16 (alterations in original) (quoting *People v. Rachulap*, 2022 Guam 9 ¶ 12). "We measure only the 'existence or non-existence of evidence, not its weight.'" *Id.* (quoting *Rachulap*, 2022 Guam 9 ¶ 12).

## IV.  ANALYSIS

[12] Most of the parties' arguments on appeal hinge on Pinaula's testimony during the trial and whether he "opened the door" to inadmissible evidence about his prior arrests, prior convictions, current pending case, and pretrial release status. *See* Appellant's Am. Br. at 16, 18–31 (May 6, 2024); Appellee's Br. at 5–19 (June 5, 2024); Appellant's Reply Br. at 1–5 (June 19, 2024). Since all "relevant" evidence is subject to balancing under GRE 403, we focus squarely on whether the probative value of Pinaula's testimony about his pending cases and pretrial release status was substantially outweighed by the danger of unfair prejudice. *See* Guam R. Evid. 403. We conclude that it was, and that the trial court's error in not conducting any GRE 403 balancing explicitly, on the record, was not harmless. We vacate the judgment of conviction for these reasons and decline to reach the other allegations of error.

//

//

//

**A. The Trial Court Committed Reversible Error When It Failed to Conduct an Explicit, On-The-Record Analysis Under GRE 403**

> **1. The probative value of Pinaula's testimony about his pending cases and pretrial release status was substantially outweighed by the danger of unfair prejudice**

[13]     Pinaula argues the trial court committed reversible error when, over his objection, the court permitted the government to introduce evidence of his pending criminal matter and pretrial release status to argue that he knowingly possessed a firearm and methamphetamine. Appellant's Am. Br. at 18–20. He argues the trial court allowed this evidence "without conducting any analysis under Rule 403." *Id.* at 1. The People argue that although "Pinaula directs his argument on appeal to Guam Rules of Evidence 403 and 404(b), . . . that is not the basis on which the evidence was admitted. Those Rules do not control the admissibility of the evidence challenged here, and Pinaula's analysis of them is immaterial." Appellee's Br. at 9. The People are incorrect; the plain language of GRE 403 states all "relevant" evidence is subject to its general balancing determination. *See* Guam R. Evid. 403.

[14]     Even if Pinaula had opened the door to his entire criminal history by stating he had "bad experience[s] with police officers," Tr. at 37 (Jury Trial, Day 3), that evidence was still subject to Rule 403.[2]  As we have recently stated, "The concept of 'opening the door' is notoriously imprecise. We agree that 'it would be no great loss if the phrase 'opening the door' disappeared

---

[2] And we have serious doubts about this proposition. "Generally, '[e]vidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion.' The circumstantial use of character evidence is generally discouraged because it carries serious risk of prejudice, confusion and delay." *Guam Sanko Transp., Inc. v. Pac. Modair Corp.*, 2014 Guam 31 ¶ 18 (alteration in original) (quoting Guam R. Evid. 404(a)). "It is black-letter law that the government cannot introduce evidence of a defendant's prior bad acts to show [his] propensity to commit the charged crime." *United States v. Bell*, 624 F.3d 803, 810 (7th Cir. 2010) (alteration in original) (quoting *United States v. Ciesiolka*, 614 F.3d 347, 355 (7th Cir. 2010)). "When a criminal defendant creates a false or misleading impression on an issue, courts have held the government may clarify, rebut, or complete the issue with what would otherwise be inadmissible evidence, including hearsay statements." *People v. Callahan*, 2022 Guam 13 ¶ 41 (quoting *People v. Morales*, 2022 Guam 1 ¶ 58) (internal quotation marks and brackets omitted). But even then, "there are limits on this doctrine; [t]he admitted evidence must put the misleading evidence or testimony into context and may generally not 'stray beyond the scope of the invitation.'" *Id.* (quoting *Morales*, 2022 Guam 1 ¶ 59).

from the lexicon of evidence law.'" *Sharpe*, 2024 Guam 12 ¶ 38 n.10 (quoting 21 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure—Evidence* §§ 5039, 5039.1 (2d ed. (June 2024 Update))). We also recently relied on Wright and Miller's definition to clarify the doctrine of "opening the door," which "[o]ccurs when a party introduces evidence or takes an action that allows previously inadmissible evidence to become admissible. For instance, a criminal defendant presenting evidence of good character enables the admission of prosecution evidence regarding bad character." *People v. Kusterbeck*, 2024 Guam 3 ¶ 23 n.7 (citing Wright & Miller, *supra*, § 5039). As Wright and Miller explain: "Once we have grasped the essential core of 'opening the door,'" it becomes apparent that it "depends upon the straightforward and proper application of the . . . Rules of Evidence. . . . In short, courts would go on doing what they do even if the metaphor vanished from the law." Wright & Miller, *supra*, § 5049.2 (2d ed. (Sep. 2025 Update)) (footnotes omitted). The principle that application of the "opening the door" doctrine should be a straightforward application of the Rules of Evidence is an important reminder. "It is well-established that *all* admissible evidence is subject to exclusion under Rule 403." *United States v. King*, 713 F.2d 627, 632 (11th Cir. 1983) (citations omitted). Or, as Wright and Miller put it, "opening the door does not deprive the trial court of the power to exclude evidence coming through it by an exercise of the discretion conferred by . . . Rule of Evidence 403." Wright & Miller, *supra*, § 5049.2 (footnote omitted).

[15]     Where a party seeks to introduce prior bad act evidence and opposing counsel objects, the trial court must explicitly perform an analysis under GRE 403 on the record. *People v. Quintanilla*, 2001 Guam 12 ¶ 18 ("Under Rule 403, it is the court's duty to 'weigh the factors explicitly.'" (quoting *People v. Evaristo*, 1999 Guam 22 ¶ 17)). We have explained that "[i]f the People satisfy their burden of proving all four factors of the *Hinton* test, then the trial court must determine

'whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice,' otherwise known as the balancing test under GRE 403." *People v. John*, 2016 Guam 41 (quoting *People v. Camaddu*, 2015 Guam 2 ¶ 47). Setting aside whether the challenged statements fell within the scope of GRE 404(b) and, if they do, whether the statements narrowly meet the *Hinton* test for admitting evidence of prior bad acts under GRE 404(b), they still should not have been admitted here since their "probative value is substantially outweighed by the danger of unfair prejudice." *See* Guam R. Evid. 403; *Camaddu*, 2015 Guam 2 ¶ 12 (citing *United States v. Hinton*, 31 F.3d 817, 822 (9th Cir. 1994)). The trial court did not undertake an explicit GRE 403 balancing test on the record. As the U.S. Supreme Court has explained, the probative value of a piece of evidence includes the availability of other means of proof:

> [A] reading of the companions to Rule 403, and of the commentaries that went with them to Congress, makes it clear that what counts as the Rule 403 "probative value" of an item of evidence . . . may be calculated by comparing evidentiary alternatives. The Committee Notes to Rule 401 explicitly say that a party's concession is pertinent to the court's discretion to exclude evidence on the point conceded. Such a concession, according to the Notes, will sometimes "call for the exclusion of evidence offered to prove [the] point conceded by the opponent . . . ." Advisory Committee's Notes on Fed. R. Evid. 401, 28 U.S.C. App., p. 859. As already mentioned, the Notes make it clear that such rulings should be made not on the basis of Rule 401 relevance but on "such considerations as waste of time and undue prejudice (see Rule 403) . . . ." *Ibid.*

*Old Chief v. United States*, 519 U.S. 172, 184 (1997) (second alteration in original). Thus, even relevant evidence may be excluded under Rule 403 when less prejudicial alternatives exist or when the opposing party has conceded a point.

[16]     A critical element in dispute was Pinaula's mental state: whether he knowingly possessed both the gun and methamphetamine.[3] The People could have argued Pinaula acted knowingly by

---

[3] The essential elements of the crimes Pinaula was convicted of were:

7A, Essential Elements of Possession of a Firearm Without Identification Card. The People must prove beyond a reasonable doubt that the Defendant, Jesse Junior Quintanilla Pinaula aka Jesse

introducing evidence that Pinaula walked away, including his own testimony of his reason for leaving, without inquiring further and eliciting highly prejudicial evidence of his current pending case and pretrial release status. Instead, in the People's closing, they argued that Pinaula "walked away" because "[h]e understands how this works. . . . [H]e understands what it means . . . to go through the process," and that "he knows he's not allowed to have Schedule II Controlled Substances. He knows he's not allowed to have a gun. He knows this, because he's on pre-trial release on another case." Tr. at 9–10, 16 (Jury Trial, Day 4, May 30, 2023). Going into Pinaula's pending cases and pretrial release status was unnecessary to show he acted knowingly.

[17] "That the flight of a person accused of the commission of a crime is competent evidence against him is well settled . . . ." *Campbell v. United States*, 221 F. 186, 190 (9th Cir. 1915) (citing *Allen v. United States*, 164 U.S. 492 (1896)). "The nature of an attempt to flee from law enforcement officials is probative of possession as well as knowledge." *United States v. Chambers*, 918 F.2d 1455, 1458 (9th Cir. 1990) (citing *United States v. Morando-Alvarez*, 520 F.2d 882, 884 (9th Cir. 1975)). "The flight of a person after the commission of a crime and before

---

Quintanilla Pinaula, Jr.:

1.  On or about April 14, 2021,
2.  In Guam,
3.  Did knowingly,
4.  Owned, used, carried, acquired, or possessed a firearm, specifically, a Smith and Wesson Revolver 38 Special,
5.  At a time when he had not obtained a firearm identification card.

7B, Essential Elements of Possession of a Schedule II Controlled Substance. The People must prove beyond a reasonable doubt that the Defendant, Jesse Junior Quintanilla Pinaula:

1.  On or about April 14, 2021,
2.  In Guam,
3.  Did knowingly or intentionally;
4.  Possessed a Schedule II Controlled Substance, that is, an amphetamine-based substance.

Transcript ("Tr.") at 28–29 (Jury Instrs./Verdict, May 31, 2023).

his arrest is, under the prevailing rule, a circumstance to be considered with the other circumstances of the case in determining his guilt or innocence." 25 A.L.R. 886 (Originally published in 1923).

[18]     A person need not be on pretrial release to know that being caught by police with guns and drugs is to be avoided. The elements of the charged crimes do not require Pinaula to be on pretrial release to be convicted. Pinaula walking away—standing alone—could have raised a sufficiently strong inference he knew about the gun and methamphetamine in the car.

[19]     The probative value of Pinaula's testimony about his pending cases and pretrial release status is substantially outweighed by the danger of unfair prejudice, particularly because the jury heard this evidence and may have improperly inferred a propensity for criminal conduct. The prosecution could have demonstrated Pinaula's knowledge through evidence of his leaving, including his own testimony about why he left, without further questioning that would have introduced highly prejudicial evidence about his current pending case and pretrial release status. *See Old Chief*, 519 U.S. at 184 ("[W]hat counts as the Rule 403 'probative value' of an item of evidence . . . may be calculated by comparing evidentiary alternatives."). Not only did the jury hear this prejudicial testimony, but the People improperly argued that because Pinaula has a criminal record and was out on pretrial release, he fled from the scene of this crime and committed this crime. This is unfairly prejudicial evidence that GRE 403 is designed to prevent the jury from hearing, and the trial court abused its discretion in allowing it to be admitted.

**2.  The trial court's failure to perform any GRE 403 balancing was not harmless**

[20]     "[T]he ban on propensity evidence is of constitutional magnitude." *See United States v. LeMay*, 260 F.3d 1018, 1027 (9th Cir. 2001); *McKinney v. Rees*, 993 F.2d 1378 (9th Cir. 1993), as amended (June 10, 1993) (answering question "When does the use of character evidence to show propensity constitute a violation of the Due Process Clause?"). Introducing "such evidence

can amount to a constitutional violation only if its prejudicial effect far outweighs its probative value." *LeMay*, 260 F.3d at 1026. The Ninth Circuit has explained, "It is part of our community's sense of fair play that people are convicted because of what they have done, not who they are." *McKinney*, 993 F.2d at 1386. Pinaula argues that he "was denied a right to a fair trial by the introduction of evidence regarding his criminal history." Appellant's Am. Br. at 16. Because we find reversal warranted even under the lower harmless error threshold for non-constitutional errors, we decline to address whether the admission of the unfairly prejudicial evidence violated Pinaula's due process rights. Our analysis proceeds under the harmless error standard for non-constitutional errors: whether "it is more probable than not that the error did not materially affect the verdict." *Sharpe*, 2024 Guam 12 ¶ 14 (quoting *Callahan*, 2022 Guam 13 ¶ 17).

[21]     "When a trial court abuses its discretion, 'we are required to reverse the conviction unless the prosecution demonstrates that the error is harmless.'" *People v. Vargas*, 2024 Guam 1 ¶ 30 (quoting *People v. Pugh*, 2018 Guam 14 ¶ 26). "The harmless error 'inquiry typically involves analysis of numerous factors, including: (1) the overall strength of the prosecution's case; (2) the prosecutor's conduct with respect to the improperly admitted evidence; (3) the importance of the wrongly admitted evidence; and (4) whether such evidence was cumulative of other properly admitted evidence.'" *Sharpe*, 2024 Guam 12 ¶ 59 (quoting *Roten*, 2012 Guam 3 ¶ 41). The People have failed to show "it is more probable than not that the error did not materially affect the verdict." *See id.* ¶ 14.

[22]     The first factor—the overall strength of the prosecution's case—weighs in favor of a finding of harmless error. While the People had only circumstantial evidence connecting Pinaula to the gun and methamphetamine pipe, the People correctly noted that circumstantial evidence can be sufficient to support a conviction. *See* Appellee's Br. at 15 (citing *People v. Pinaula*, 2023

Guam 2 ¶ 63; *People v. Morales*, 2022 Guam 1 ¶ 71). We have explained this factor "is satisfied when the prosecution's case was strong enough to support a conviction even without the erroneously admitted evidence." *Bosi*, 2022 Guam 15 ¶ 57 (citing *People v. Perez*, 2015 Guam 10 ¶ 36).

[23] The second factor—the prosecutor's conduct regarding the improperly admitted evidence—weighs in favor of prejudice because, contrary to the People's characterization, the prosecution emphasized the improperly admitted evidence during its closing argument. The prosecution stated that Pinaula "knows he's not allowed to have Schedule II Controlled Substances. He knows he's not allowed to have a gun. He knows this, because he's on pre-trial release on another case." Tr. at 16 (Jury Trial, Day 4). This was not a passing reference but a central part of the prosecution's argument for Pinaula's knowledge, drawing a direct connection between his pretrial release status and his alleged knowledge of the gun and methamphetamine. The parties had stipulated that the trial would be bifurcated, not addressing the felony-on-felony release until after the jury had heard and decided on the evidence related to the charges. The trial court also instructed the prosecution not to raise it. The prosecution's subsequent emphasis of this evidence in closing arguments directly contravened the court's earlier ruling on bifurcation. This was not just testimony the jury heard in passing; the prosecution elicited it and built its case around it.

[24] The third factor—the importance of the wrongly admitted evidence—weighs in favor of prejudice because, despite the People's claim that the testimony the prosecution elicited from Pinaula "was not particularly important to the case," *see* Appellee's Br. at 15, it provided a prejudicial propensity inference we cannot say did not improperly influence the jury. Pinaula argues that "[e]vidence that Pinaula was on felony release at the time of the incident essentially

shows that he had been arrested and charged in another criminal matter even when there has been no conviction." Appellant's Am. Br. at 25. We agree. The trial court's decision to bifurcate the trial and instruction to the prosecution not to present any evidence of his felony-on-felony release underscores the importance of this evidence. This evidence invited the jury to make precisely the character-based inference that GRE 404(b) is designed to prevent—that because Pinaula had allegedly committed other crimes, he was more likely to have committed the charged offenses. The People argue that Pinaula walking away was sufficient to establish knowledge, characterizing his departure from the scene as "inexplicably bizarre" and his explanation as "strain[ing] credulity." Appellee's Br. at 15–16. However, this argument reinforces why the improperly admitted evidence was unnecessary.

[25] The fourth factor—whether this evidence was cumulative of other properly admitted evidence—weighs in favor of prejudice. We have held that "if a part of the testimony was inadmissible but was merely cumulative to other legitimate testimony, then any error is harmless." *Callahan*, 2022 Guam 13 ¶ 33. However, the evidence of Pinaula's pending case and pretrial release status was not merely cumulative of the evidence he walked away. The evidence of his pretrial release status introduced information about another, unrelated criminal charge for which he had not been convicted. This evidence introduced a different and improper basis for inferring guilt—his alleged propensity for criminal conduct—which is distinct from and not cumulative of the consciousness of guilt that might be inferred from flight, as a circumstance among others.

[26] Considering these factors, we conclude that the trial court's error in admitting evidence of Pinaula's pending case and pretrial release status was not harmless. Although the first factor supports harmless error due to the circumstantial evidence supporting the prosecution's case, the remaining three factors weigh heavily against this finding. The prosecution's emphasis on the

improperly admitted evidence during closing arguments—in direct contravention of the trial court's bifurcation ruling—coupled with the prejudicial and non-cumulative nature of the propensity evidence, prevents us from concluding "it is more probable than not that the error did not materially affect the verdict." *See Sharpe*, 2024 Guam 12 ¶ 14. Because the People could have argued that Pinaula acted knowingly by introducing evidence of his departure, without eliciting unfairly prejudicial testimony about Pinaula's pending cases and pretrial release status on cross-examination, we vacate the judgment of conviction.

## B. There Is Sufficient Evidence to Sustain Pinaula's Convictions

[27]     Despite finding reversible error, we must still address Pinaula's claim that there is insufficient evidence to support his convictions. *See People v. Quinata*, 2023 Guam 25 ¶ 20 ("Typically, when a defendant raises the issue of sufficiency of evidence, this court must address that claim. A finding of insufficient evidence entitles a defendant to an acquittal of that charge, along with the protection of double jeopardy."). When reviewing evidentiary sufficiency, "[w]e are 'concerned with the existence or non-existence of evidence, not its weight, and this standard remains constant even when the People rely exclusively on circumstantial evidence.'" *Soram*, 2024 Guam 10 ¶ 38 (quoting *People v. Sked*, 2023 Guam 26 ¶ 23). Pinaula argues that "the Government's evidence could not sustain a guilty verdict" because it "did not present direct evidence but solely relied on circumstantial evidence to prove constructive possession of both the firearm and glass pipe." Appellant's Am. Br. at 29. This is incorrect. Circumstantial evidence may, in cases like this one, be sufficient evidence. *See Soram*, 2024 Guam 10 ¶ 38.

[28]     Applying the "highly deferential" standard of viewing the evidence in the light most favorable to the People with all reasonable inferences drawn therefrom, the testimony by five Guam police officers and Mariano provided sufficient evidence from which a rational trier of fact

could have found the essential elements of the crimes beyond a reasonable doubt. *See id.* ¶¶ 10, 38; *Riosen*, 2023 Guam 23 ¶ 16. The officer's testimony that Pinaula got out of the driver's side of the vehicle combined with testimonies that the methamphetamine pipe and revolver were found inside create a reasonable inference of Pinaula's possession of the items. *See People v. Quintanilla*, 2020 Guam 8 ¶ 14 ("[T]here is no distinction between actual and constructive possession under Guam's definition of possession . . . ." *See, e.g.*, *United States v. Walker*, 734 F.3d 451, 454 n.1, 457–58 (6th Cir. 2013) (holding evidence sufficient to establish possession, "whether actual or constructive," for weapon possession conviction where indictment alleged defendant "knowingly possess[ed] a firearm and or ammunition in and affecting commerce" (alteration in original)) . . . ."). Based on Pinaula's behavior in abandoning the scene after claiming he needed to use the bathroom, a jury could infer a consciousness of guilt as to the contraband in the vehicle. Mariano's testimony that the contraband items did not belong to her further strengthens the inference that they belonged to Pinaula.

[29]     While Pinaula offered alternative explanations for his actions and denied ownership of the items, under this standard of review, we do not reweigh the evidence but determine only its existence, affording the People "the strongest legitimate view of the evidence." *Riosen*, 2023 Guam 23 ¶ 16, 18 ("Courts do not assess witness credibility, resolve conflicts in the evidence, or weigh evidence; these roles are solely within the domain of the jury." (citing *People v. Acosta*, 2022 Guam 11 ¶ 49; *People v. Song*, 2012 Guam 21 ¶ 29)).

[30]     "[F]light evidence carries with it a strong presumption of admissibility. . . . Because of the strength of the rule of admissibility of flight evidence, few cases are to be found in which the evidence is excluded by the trial court." *United States v. Martinez*, 681 F.2d 1248, 1256–57 (10th Cir. 1982) (per curiam). The U.S. Supreme Court has explained that there are sometimes innocent

explanations for flight: "[I]t is a matter of common knowledge that men who are entirely innocent do sometimes fly from the scene of a crime through fear of being apprehended as the guilty parties, or from an unwillingness to appear as witnesses." *Alberty v. United States*, 162 U.S. 499, 511 (1896). "The fact that the accused may seek to rebut flight evidence in a way that would create new evidentiary problems is *not* a justification for excluding it . . . ." *Martinez*, 681 F.2d at 1259 (emphasis added) (citation omitted). When evidence of flight was introduced to support an inference of guilt among other circumstances, limiting instructions have been consistently upheld. *See, e.g.*, *United States v. Hicks*, 116 F.4th 1109, 1116–17 (10th Cir. 2024) (collecting cases) (upholding an "instruction [that] informed the jury it may—but was not required to—consider Defendant's flight as suggesting his consciousness of guilt. . . . [and also] invit[ed] the jury to consider specific innocent reasons for Defendant's flight").

[31]     Should similar evidentiary concerns arise in a new trial, we doubt that the highly probative value of Pinaula walking away would be outweighed by the introduction of prejudicial information through his own innocent explanation that he walked away because he had previous bad experiences with the police. *See* Guam R. Evid. 403. However, any follow-up questions must also satisfy the GRE 403 balancing requirement. Pinaula's explanation for walking away is distinct from the prosecution eliciting unfairly prejudicial testimony about Pinaula's pending cases and pretrial release status on cross-examination, and the trial court failing to explicitly perform any balancing under GRE 403 upon defense counsel's objection. *See Quintanilla*, 2001 Guam 12 ¶ 18. A limiting instruction or stipulation could have lessened the prejudicial effect of Pinaula's innocent explanation for walking away. *See, e.g.*, *Hicks*, 116 F.4th at 1116–17.

**[32]**    The testimony, taken together and viewed in the light most favorable to the People, provides sufficient evidence for a rational jury to have found beyond a reasonable doubt that Pinaula possessed the firearm and methamphetamine.  *See Riosen*, 2023 Guam 23 ¶ 16, 18.

### V.  CONCLUSION

**[33]**    The trial court abused its discretion by admitting unfairly prejudicial evidence of Pinaula's pending criminal case and pretrial release status without explicitly conducting the required balancing under GRE 403 on the record.  *See Quintanilla*, 2001 Guam 12 ¶ 18.  This error was not harmless, as the prosecution emphasized this inadmissible propensity evidence during its closing argument, encouraging the jury to infer that because Pinaula had allegedly committed other crimes, he was more likely to have committed the charged offenses.  We cannot say that "it is more probable than not that the error did not materially affect the verdict."  *See Sharpe*, 2024 Guam 12 ¶ 14.  However, the admissible evidence was sufficient to sustain the conviction when viewed in the light most favorable to the People, and the introduction of unfairly prejudicial evidence was unnecessary for a rational jury to have found beyond a reasonable doubt the crimes charged.  *See Riosen*, 2023 Guam 23 ¶ 16.  Because the trial court admitted unfairly prejudicial evidence of Pinaula's pending criminal case and pretrial release status, we **VACATE** Pinaula's convictions and **REMAND** for new proceedings not inconsistent with this opinion.


| /s/ | /s/ |
| :---: | :---: |
| F. PHILIP CARBULLIDO | KATHERINE A. MARAMAN |
| Associate Justice | Associate Justice |


/s/
ROBERT J. TORRES
Chief Justice