
# IN THE SUPREME COURT OF GUAM

## PEOPLE OF GUAM,
Plaintiff-Appellee,

**v.**

## JOINER ANES SORAM,
**aka Joyner Soram aka Junior Soram aka "Slim Thug,"**
Defendant-Appellant.

Supreme Court Case No.: CRA23-005
Superior Court Case No.: CF0727-22

## OPINION

## Cite as: 2024 Guam 10

Appeal from the Superior Court of Guam
Argued and submitted on March 6, 2024
Hagåtña, Guam

Appearing for Defendant-Appellant:
Brian P. Eggleston, *Esq.*
Assistant Public Defender
Public Defender Service Corporation
779 Rte. 4
Sinajana, GU 96910

Appearing for Plaintiff-Appellee:
Randall Winston B. Albright, *Esq.*
Daniel Morris, *Esq.*
Assistant Attorneys General
Office of the Attorney General
590 S. Marine Corps Dr., Ste. 801
Tamuning, GU 96913


E-Received
12/20/2024 2:09:51 PM

BEFORE: ROBERT J. TORRES, Chief Justice; F. PHILIP CARBULLIDO, Associate Justice; and KATHERINE A. MARAMAN, Associate Justice.

**CARBULLIDO, J.:**

[1]     Defendant-Appellant Joiner Anes Soram appeals his conviction of second-degree robbery, aggravated assault, and two corresponding deadly-weapon special allegations.  Soram argues the trial court committed plain error when it failed to instruct the jury on third-degree robbery as an included offense of second-degree robbery.  He also argues the trial court committed plain error when it allowed hearsay statements into evidence.  Soram additionally claims the court committed reversible error when it granted his co-defendant's motion for a judgment of acquittal but denied his own.  Finally, he argues his right to effective assistance of counsel was violated.  We affirm.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

[2]     Soram and a co-defendant were each charged with second-degree robbery and aggravated assault with two corresponding deadly-weapon special allegations.  They were charged with being "armed with what appeared to be a deadly weapon, that is, a bat, while in the course of committing theft of personal property."  Record on Appeal ("RA"), tab 10 at 2-3 (Indictment, Dec. 22, 2022) (emphases removed).  The special allegations on both charges pertained to the possession or use of a deadly weapon, a bat, in the commission of a felony, in violation of 9 GCA § 80.37.

[3]     These charges stemmed from an incident near Pacific Tyre on Route 10 in Mangilao.  During the incident, Gerson Hoebing noticed three men in a scuffle.  Hoebing testified that one of the men was carrying something that appeared to be a bat or piece of metal.  Hoebing testified that one of these men, later identified as the victim, ran across the street and into traffic.  Hoebing stopped to help the victim, who asked Hoebing to call the police, claiming that the other two men had stolen his belongings.  The police asked Hoebing to "put eyes on" the two men.  Transcript ("Tr.") at 25 (Jury Trial (A.M.), Apr. 13, 2023).  Hoebing stated he saw one of them shirtless, and

that one of them was carrying "a bat or a metal -- a metal piece of a device." *Id.* at 25-26. Hoebing followed the men from a distance in his vehicle to the entrance of George Washington High School ("GW"), where he saw police approach the men. Hoebing did not interact with the officers at GW.

[4]     When the police arrived at GW, they found two men they identified as Soram and his co-defendant. Soram was wearing a backpack and holding a baseball bat; his co-defendant was shirtless. The police searched the co-defendant and found two $5 bills, five $1 bills, and some quarters on him—which was less than the $20 the victim reported was stolen from him. Upon searching Soram, the police seized a watch the victim identified as stolen from him.

[5]     Officer Leon Guerrero, who interviewed the victim at the scene, testified that the victim indicated "something to the effect of, 'They robbed me. The two guys robbed me,'" and that he was hit with a baseball bat. Tr. at 20 (Jury Trial, Apr. 12, 2023). The victim has a cognitive disability, and Officer Leon Guerrero noted that he had to use simpler words when speaking with the victim. The officer testified that he brought the victim to GW, where Soram and his co-defendant were in the custody of the other responding officers, and the victim pointed at the individual in the black shirt and said "something to the effect of, 'He hit me. He stole my money.'" *Id.* at 22. The police did not observe any visible injuries on the victim that night, but bruising was later documented on the victim's upper left thigh, the area he reported he had been hit by the baseball bat.

[6]     Both Soram and his co-defendant were indicted and tried together in a jury trial. Independent counsel represented each defendant. The People presented their case with testimony from Hoebing, the victim, and the three responding officers. After the People rested their case, both defense attorneys raised motions for judgments of acquittal. The trial court granted the co-defendant's acquittal motion on the robbery charge and reduced the aggravated assault charge to misdemeanor assault based on the lack of evidence that the co-defendant ever had the baseball bat.

The trial court denied Soram's motion, finding sufficient evidence to send both the aggravated assault and robbery charges to the jury.

[7]     The jury found Soram guilty on all charges, while his co-defendant was acquitted. Soram was sentenced to 12 years of imprisonment. He timely appealed.

## II. JURISDICTION

[8]     This court has jurisdiction over criminal appeals from final judgments of the Superior Court. 48 U.S.C.A. § 1424-1(a)(2) (Westlaw through Pub. L. 118-157 (2024)); 7 GCA §§ 3107, 3108(a) (2005); 8 GCA §§ 130.10, 130.15(a) (2005).

## III. STANDARD OF REVIEW

[9]     Absent any request for a lesser-included-offense instruction at trial, we review for plain error the trial court's failure to issue such an instruction *sua sponte*. *People v. Ramey*, 2019 Guam 11 ¶ 15.[1] We also review the admission of hearsay statements without objection for plain error. *People v. Morales*, 2022 Guam 1 ¶ 38. Under plain error review, "[w]e will not reverse unless (1) there was an error; (2) the error is clear or obvious under current law; (3) the error affected substantial rights; and (4) reversal is necessary to prevent a miscarriage of justice or to maintain the integrity of the judicial process." *People v. Mendiola*, 2023 Guam 12 ¶ 16 (quoting *People v. Quitugua*, 2009 Guam 10 ¶ 11).

[10]    "Where a defendant raise[d] the issue of sufficiency of the evidence by a motion for judgment of acquittal, we review the trial court's denial of the motion *de novo*." *People v. Song*,

---

[1] We have stated that "[w]e do not necessarily agree that plain error analysis is the appropriate standard of review" of the issue of whether a trial court has violated its "duty to issue lesser included offense instructions 'without regard to whether such instructions were requested or objected to by the parties.'" *People v. Cummins*, 2010 Guam 19 ¶ 7 (quoting *Angoco v. Bitanga*, 2001 Guam 17 ¶ 21). But, in later cases, we have applied the plain error framework. *See People v. Campos*, 2015 Guam 11 ¶ 36; *People v. Ramey*, 2019 Guam 11 ¶ 15. The standard we adopted in *Angoco* was based on decisions from the Hawai‘i and California Supreme Courts. 2001 Guam 17 ¶ 21. Those courts are split on whether plain error applies to such claims. *Compare State v. Kinnane*, 897 P.2d 973, 977 (Haw. 1995) (observing claims are reviewed for plain error), *with People v. Wilson*, 484 P.3d 36, 63 (Cal. 2021) (reviewing *de novo*). Consistent with our past decisions and the Hawai‘i approach, we will continue to review these claims for plain error.

2021 Guam 14 ¶ 16 (quoting *People v. Aguon*, 2020 Guam 24 ¶ 11).  We also review *de novo* whether to set aside a conviction based on an inconsistent verdict, *People v. Leslie*, 2011 Guam 23 ¶ 12, including claims about inconsistencies in the trial court's resolution of motions for judgments of acquittal, *see Harris v. Rivera*, 454 U.S. 339, 344 (1981) (per curiam).  "Our review of evidentiary sufficiency is *de novo*, but it is 'highly deferential' to the findings of the trier of fact." *People v. Riosen*, 2023 Guam 23 ¶ 16 (quoting *People v. Rachulap*, 2022 Guam 9 ¶ 12).

[11]    "Ineffective assistance of counsel claims are mixed questions of law and fact, which we review *de novo*." *People v. Cruz*, 2023 Guam 1 ¶ 7 (quoting *People v. Guerrero*, 2017 Guam 4 ¶ 18).

## IV.  ANALYSIS

### A.  There Was No Rational Basis to Instruct the Jury on Third-Degree Robbery as a Lesser-Included Offense

[12]    Soram concedes he did not ask that the jury be instructed on third-degree robbery as a lesser-included offense of second-degree robbery, nor did he object to the lack of this instruction. Appellant's Br. at 9 (Jan. 2, 2024).  He argues the trial court committed plain error in failing to *sua sponte* instruct the jury that they could convict him of third-degree robbery as a lesser-included offense of second-degree robbery.  *See id.*

[13]    "The first prong of plain error analysis requires the defendant to prove there was error." *People v. Taisacan*, 2023 Guam 19 ¶ 35 (quoting *People v. Bosi*, 2022 Guam 15 ¶ 48).  Soram is correct that "when there is a rational basis for a lesser-included offense instruction as shown by substantial evidence, the court must issue such an instruction *sua sponte*, 'without regard to whether such instructions were requested or objected to by the parties.'" *People v. Campos*, 2015 Guam 11 ¶ 37 (quoting *Angoco v. Bitanga*, 2001 Guam 17 ¶ 21); *see also* Appellant's Br. at 9 (citing *Campos*, 2015 Guam 11 ¶ 37).  We conduct a two-step analysis to determine whether the

trial court erred in failing to *sua sponte* instruct the jury on a lesser-included offense: first, we must determine whether the "lesser offense is within the offense charged," *Campos*, 2015 Guam 11 ¶ 37 (citation omitted), "[t]hen, in accordance with 8 GCA § 90.27, we must determine whether there is a 'rational basis' in the evidence to give the included offense instruction," *Ramey*, 2019 Guam 11 ¶ 15. We decided in *Campos* and reaffirmed in *Ramey* that third-degree robbery is a lesser-included offense of second-degree robbery. *Campos*, 2015 Guam 11 ¶ 40; *Ramey*, 2019 Guam 11 ¶ 18. So, the question turns to whether there was a rational basis in the evidence to give the lesser-included-offense instruction.

[14] Soram argues that "the jury could rationally acquit [him] of second-degree robbery by finding [he] used force against [the victim] to overcome his resistance in the course of committing a theft, but also finding that [he] did not use the bat in a manner that would render it an apparently "deadly weapon." Appellant's Br. at 10. This misinterprets the elements of second-degree robbery.

[15] "Under 8 GCA § 90.27, a court must provide an included offense instruction '[w]hen there is a rational basis for a verdict acquitting the defendant of the offense charged and convicting him of an included offense.'" *Ramey*, 2019 Guam 11 ¶ 19 (quoting 8 GCA § 90.27 (2005)). The question is "whether 'based on the evidence presented at trial, a rational jury could find the defendant guilty of the lesser offense but not the greater.'" *Campos*, 2015 Guam 11 ¶ 37 (citation omitted). Thus, a defendant can show they were entitled to the instruction if there is "substantial evidence" in the record that would support a guilty verdict on the lesser offense. *Angoco*, 2001 Guam 17 ¶ 12. "In order to determine whether there was a rational basis for such a verdict, we conduct a *de novo* review of the record." *Campos*, 2015 Guam 11 ¶ 41.

[16] To convict Soram of second-degree robbery as charged, the jury had to find that "in the course of committing a theft, he: . . . [wa]s armed with or display[ed] what appear[ed] to be . . . a

deadly weapon." 9 GCA § 40.20(a)(3) (2005). But to convict a defendant of third-degree robbery, a jury must find that, in the course of committing a theft, the defendant either:

>        (1) use[d] force against another with intent to overcome his physical resistance or physical power of resistance; or

>        (2) threaten[ed] another with or intentionally put[] him in fear of the imminent use of force against the person of anyone with intent to compel acquiescence to the taking of or escaping with property.

9 GCA § 40.30(a)(1)-(2) (2005). We explained in *Campos* that "[i]n order to acquit [the defendant] of robbery in the second degree and convict him of robbery in the third degree, the jury would have had to conclude that [the defendant] *committed the robbery but was not armed at the time*." *Campos*, 2015 Guam 11 ¶ 42 (emphasis added).

[17]    Soram argues that he could have been acquitted of second-degree robbery because a rational jury could have found the bat was not used as a deadly weapon.[2] But this argument is misplaced because the existence of a deadly weapon is not an essential element of second-degree robbery. The subsection under which Soram was charged required the jury to find only that he was armed with or displayed what *appeared* to be a deadly weapon. 9 GCA § 40.20(a)(3); RA, tab 10 at 1-2 (Indictment). As we have explained in past cases, where "[t]he statute upon which the charge rested required the prosecutor to prove that the weapon *appeared* to be deadly," the People need not prove that the weapon is "*actually* deadly." *People v. Cruz*, 1998 Guam 18 ¶ 2 (emphasis added). "The language of 9 GCA § 40.20(a)(3) . . . focuses upon the projection to do harm during [the course of committing] a theft and not the weapon's actual ability to harm." *Id.* ¶ 15. Thus, to acquit Soram of second-degree robbery and convict him of the lesser-included offense

---

[2] Title 9 GCA § 40.20(a)(3) cross-references 9 GCA § 16.10 for the definition of "Deadly Weapon." Section 16.10 defines "Deadly Weapon" as "any firearm, or other weapon, device, instrument, material or substance, whether animate or inanimate, which in the manner it is used or is intended to be used is known to the defendant to be capable of producing death or serious bodily injury." 9 GCA § 16.10(d) (2005).

of third-degree robbery, the jury would have had to conclude that Soram committed a robbery but did not display what appeared to be a deadly weapon.

[18]     That a baseball bat is not *per se* a deadly weapon does not mean that when a bat is displayed during the course of a theft, it cannot *appear* to be a deadly weapon. *See id.* ("The testimony of witnesses that [the defendant] displayed what appeared to be a large knife during the theft is dispositive of the issue and requires this court to affirm the trial judge's decision as to the first robbery charge."). The question is not the "actual ability to do physical harm with the weapon," but whether the weapon "project[s] the ability to do harm so as to engender fear in the victim." *Id.* ¶ 14 (quoting *People v. Marquez*, DCA Crim. No. 86-00016A, 1987 WL 109388, at *2 (D. Guam App. Div. July 31, 1987)). A rational jury could not have found that the bat did not *appear* to be a deadly weapon, because a bat projects the ability to do harm—even when it is not used as a deadly weapon. We conclude there would be a rational basis for giving the lesser-included-offense instruction only if there was evidence Soram did not possess the bat.

[19]     However, a review of the record reveals evidence that Soram possessed and displayed a baseball bat in the course of committing a theft. The record included testimony from three police officers who responded to the incident, the victim, and an eyewitness. The victim stated that he was struck by the bat during the scuffle with his assailants. *See* Tr. at 20 (Jury Trial, Apr. 12, 2023). The eyewitness testified he saw one of the men involved in the scuffle carrying a bat or metal object while walking away from the scene. Tr. at 25-26 (Jury Trial, Apr. 13, 2023). That eyewitness observed the two men from the time they walked away from the scene until the police arrived at GW. *Id.* at 24-26. The officers testified that when they arrested Soram, he had a baseball bat. Tr. at 38, 41 (Jury Trial, Apr. 12, 2023). Exhibits admitted into evidence depicted the baseball bat seized by police from Soram's possession and pictures of the victim's bruise which he stated

were caused by being struck by the bat. RA, Ex. List at Ex. 8A (Photograph of baseball bat, Apr. 12, 2023); *id.* at Ex. 7C (Picture of bruise, Apr. 13, 2023).

[20]     There is evidence that Soram possessed or displayed a baseball bat in the course of committing a theft, and he points to no evidence in the record—let alone substantial evidence—which shows he did not possess the bat. *Compare Campos*, 2015 Guam 11 ¶ 43 ("All evidence at trial suggested that the perpetrator of the robberies was armed during the commission of the crimes."), *with Ramey*, 2019 Guam 11 ¶ 21 ("Contrary to the People's contention otherwise, there was evidence adduced at trial that suggested [the victim] did not experience serious bodily injury [as required by 9 GCA § 40.20(a)(1)]."), *and Angoco*, 2001 Guam 17 ¶ 16 ("[A]lthough it is clear that there is a great deal more evidence that a robbery had been planned and attempted than not, there is also substantial evidence that [defendant] did not commit a robbery during the homicide."). Based on this evidence, a rational jury could not find that Soram committed the robbery but did not display the bat during the robbery.

[21]     The trial court did not err in failing to *sua sponte* instruct the jury on third-degree robbery as a lesser-included offense of second-degree robbery. As Soram fails to show that an error occurred, we need not address the other prongs of plain error review.

## B. The Trial Court Did Not Commit Plain Error in Admitting the Victim's Out-of-Court Statements

[22]     Soram argues that "[t]he trial court committed plain error when it allowed the prosecution to introduce numerous hearsay statements to prove that [Soram] struck [the victim] with a bat." Appellant's Br. at 15. Soram challenges three statements elicited by the People during their examination of Officer Leon Guerrero, who interviewed the victim and then transported him to GW to conduct a "field identification":

- "When I met with [the victim], he indicated that, um, something to the effect of, 'They robbed me. The two guys robbed me,' that he was walking home, he

noticed the two guys. The guy in the black shirt hit him twice with a baseball bat on his upper left thigh area. Then the individual took money from his front pocket . . . ." Tr. at 20 (Jury Trial, Apr. 12, 2023).

- "[The victim] pointed towards the individual in the black shirt, black pants, and stated, uh, something to the effect of, 'He hit me. He stole my money,' I believe." *Id.* at 22.

- "Q: Okay. When you met with [the victim], did he identify, because there were two men involved, one wearing a black shirt and one who was -- who did not have a shirt, did he indicate which one hit him with the bat? A: The individual with the black shirt." *Id.* at 32.

Appellant's Br. at 15.

**[23]** Guam Rule of Evidence ("GRE") 801 defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Guam R. Evid. 801(c). "Hearsay is generally inadmissible unless an exception applies." *People v. Callahan*, 2022 Guam 13 ¶ 31. The People argue that these statements fall under the hearsay exclusion for statements of identification or, alternatively, that the excited-utterance exception applies. Appellee's Br. at 15-16 (Feb. 15, 2024). Because we conclude it was not clear or obvious error for the trial court to admit the testimony as an excited utterance without an objection from Soram, we need not decide whether out-of-court statements made during a police interview are statements of identification under GRE 801(d)(1)(C). *See, e.g.*, *State v. Shaw*, 2005 SD 105, ¶¶ 29-31, 705 N.W.2d 620, 629 (observing majority rule is that hearsay exclusion for statements of identification "applies only to statements of identification made at an identification procedure conducted by police such as a photographic array, show-up or line-up.").

**[24]** Defense counsel did not object to the challenged testimony, so it is reviewed for plain error. *Morales*, 2022 Guam 1 ¶ 38. "'Plain error is highly prejudicial error.' 'This is "not a run-of-the-mill remedy"; rather, "it is invoked only in exceptional circumstances."'" *People v. Hosei*, 2023 Guam 22 ¶ 60 (citations omitted). Soram bears the burden of demonstrating that reversal is

warranted. *See id.* We agree with the Tenth Circuit that "failure to lodge routine evidentiary objections at trial presents particular challenges for appellate review. A timely objection permits the parties to bolster a necessary foundation or explain why none is necessary." *United States v. Frost*, 684 F.3d 963, 972 (10th Cir. 2012), *overruled in part on other grounds by United States v. Bustamante-Conchas*, 850 F.3d 1130 (10th Cir. 2017); *cf. Mendiola*, 2023 Guam 12 ¶ 41 n.7 ("[T]his case highlights why a contemporaneous objection is particularly crucial . . . . When a defendant [fails to object], . . . the trial court is deprived of the chance to cure the violation either by opening the courtroom or by explaining the reasons for closure."). "Where the determinative facts are missing from the record due to the defendant's failure to make a timely objection, we will not find plain error based on the possibility that better factual development would have made the error clear." *Frost*, 684 F.3d at 977. "Otherwise, 'we could reverse and remand because of "plain error" even though it may ultimately be resolved that there was no error at all.'" *Id.* (quoting *United States v. Lewis*, 594 F.3d 1270, 1288 (10th Cir. 2010)).

[25]     Defense counsel did not object to the statements, so the record for their admission as excited utterances was not thoroughly developed. Had Soram objected to the testimony at trial, the People would have been required to bolster the necessary foundation or explain why none was necessary. Had the People been unable to do so, the testimony may have been excluded. But on appeal, Soram must show the alleged error was clear or obvious. Due to the fact-specific nature of hearsay exceptions, under only slightly different facts, admission may have been unproblematic. Thus, we cannot say that the testimony was obviously inadmissible, such that the trial court should have excluded the testimony even without an objection from Soram. "Some hearsay errors are blatant enough to warrant plain-error reversal even without much factual development, but such is not the case here." *Id.* We conclude the circumstances of this case do not show that the extraordinary remedy of plain error is appropriate.

**1. It was not clear or obvious error for the trial court to admit the testimony without an objection from Soram**

[26]     The People do not dispute that the victim's out-of-court statements were offered for their truth. *See generally* Appellee's Br. at 13. Despite being hearsay, a statement is admissible under the excited-utterance exception if it "relat[es] to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Guam R. Evid. 803(2). Determining whether a statement is an excited utterance requires three inquiries: (1) does the statement "describe an 'event or condition startling enough to cause nervous excitement,'" (2) does the statement "relate to the startling event," and (3) was the statement "made while the declarant is under the stress of the excitement caused by the event before there is time to contrive or misrepresent." *People v. Martin*, 2018 Guam 7 ¶ 35 (citation omitted). "All three inquiries bear on the 'ultimate question' [of] '[w]hether the statement was the result of reflective thought or whether it was a spontaneous reaction to the exciting event.'" *Id.* (alterations in original) (quoting *People v. Jesus*, 2009 Guam 2 ¶ 36).

[27]     The victim's hearsay statements to the police satisfy the first and second requirements of the exception: the statements were made after a startling event and related to that event. It is less clear, however, whether these statements satisfy the requirement that they were made while the victim was under the stress of the event's excitement. "The third requirement that the statement must be made while the declarant is under the stress of the excitement caused by the event consumes the bulk of the contention and analysis in cases applying the excited utterance exception." *Jesus*, 2009 Guam 2 ¶ 38. "Courts look at various external factors as indicia of the declarant's state of mind at the time of the statements and no one factor is dispositive." *Id.* As we explained in *Jesus*:

> In deciding whether the statement was the product of stress and excitement rather than reflective thought, courts have considered various factors in totality which may

include but are not limited to: the lapse of time between the startling event and the statement, whether the statement was made in response to an inquiry, age/maturity of the declarant, the physical and/or mental condition of the declarant, characteristics of the event, and the subject matter of the statements.

*Id.* The lapse of time between the startling event and the challenged statements was not adequately developed because of defense counsel's failure to object. However, "the temporal gap between the event and the utterance is not itself dispositive," *United States v. Alexander*, 331 F.3d 116, 122-23 (D.C. Cir. 2003), and the record is somewhat more developed on other factors relevant to this case. Specifically, when determining whether statements to police are admissible as excited utterances, courts look primarily to two factors: "the spontaneity of the statement" and "the level of excitement experienced by the declarant." *Frost*, 684 F.3d at 974.

### a. The spontaneity of the victim's statements

[28] "A spontaneous statement volunteered by the declarant is more likely to come within the exception than a statement that is elicited by detailed police questioning." *Id.* As we observed in *Jesus*, "Although not determinative, a statement made in response to an inquiry could bear on whether the statement was spontaneous or deliberative. However, a victim's statement made in response to an inquiry does not, without more, negate its spontaneity as an 'excited utterance.'" 2009 Guam 2 ¶ 43. ""All other things being equal, a declarant's spontaneous statement surely is more likely to qualify as an excited utterance than a statement in response to questioning." *United States v. Magnan*, 863 F.3d 1284, 1293 (10th Cir. 2017).

[29] Defense counsel did not object to the statements of the victim recounted by Officer Leon Guerrero, so the record is somewhat underdeveloped on this point. The spontaneity of each statement challenged by Soram seems to vary. Officer Leon Guerrero undoubtedly asked the victim questions. Tr. at 21 (Jury Trial, Apr. 12, 2023) ("I attempted to -- to ask him questions that would be easier for him to understand."). The first challenged hearsay statement was in narrative

form and could be read as a summary of a detailed interview with the victim. *See* Tr. at 20 (Jury Trial, Apr. 12, 2023). But Officer Leon Guerrero also testified that the victim was "easily distracted," and the testimony can also plausibly be read as Officer Leon Guerrero trying to string together as best he could a series of outbursts into a semi-coherent narrative. *See id.* The second hearsay statement related to the "field identification" after Officer Leon Guerrero transported the victim to GW. *Id.* at 22. Again, the spontaneity of this statement is unclear; the police may have simply asked the victim to point to the person who robbed him. *See id.* But the record can also be read as the victim spontaneously pointing to Soram and saying, "He hit me. He stole my money," as soon as he arrived where Soram and his co-defendant were being detained. *See id.* It is unclear from the record whether the third challenged hearsay statement related to Officer Leon Guerrero's initial interaction with the victim or the later field identification. *See id.* at 32. The record suggests that the victim's statements may not have been wholly spontaneous, but neither were they completely deliberative.

### b. The level of excitement experienced by the victim

[30]  "If the declarant's excitement level is severe, then even statements made in response to questioning may be admitted." *Frost*, 684 F.3d at 974. "Conversely, statements made after a clear opportunity for reflection, even if entirely voluntary, may be inadmissible." *Id.* at 975. We explained in *Jesus* that "[o]ften, a witness' description of the declarant's emotional state is sufficiently weighty in determining whether the declarant's state of mind falls with[in] the excited utterance exception." *Jesus*, 2009 Guam 2 ¶ 44.

[31]  Because defense counsel did not object, Officer Leon Guerrero's description of the victim's mental state during their initial interaction and later at the field identification is also somewhat underdeveloped. But the record shows that Officer Leon Guerrero was aware of the victim's cognitive disability, his involvement in an altercation, the forceful theft of his property, and being

hit with a baseball bat. Tr. at 20-22 (Jury Trial, Apr. 12, 2023). The record additionally indicates that the victim ran into traffic to escape his assailants. *Id.* at 20. Officer Leon Guerrero also testified that the victim was "easily distracted," that the victim was "unable to understand simple words," *id.* at 20, and that the victim said his leg was "hot," *id.* at 24. Although far from overwhelming, when these observations are taken together, it would be difficult to say the victim's excitement level was not elevated.

### c. The officer's testimony was not obviously inadmissible

[32]    Reviewing the facts here places this case between severe emotional excitement and clear opportunity for reflection. *See Frost*, 684 F.3d at 974-75. Although the victim was no longer in danger, he had just been through an ordeal anyone would find traumatic. *See id.* And because "[i]t is the totality of the circumstances . . . that determines whether a hearsay statement was an excited utterance," *United States v. Belfast*, 611 F.3d 783, 817 (11th Cir. 2010), it is proper for a court to consider a declarant's cognitive disability when determining whether a statement qualifies as an excited utterance, *see State v. Breed*, 2015 VT 43, ¶ 48, 198 Vt. 574, 117 A.3d 829. Although the police questioned the victim, the evidence suggests the victim had been in a heightened emotional state since the encounter with Soram and his co-defendant. *See* Tr. at 20-22 (Jury Trial, Apr. 12, 2023). Like the declarant in *Frost*, the victim had trouble communicating his account of the events, which was due in part to his agitation. *See Frost*, 684 F.3d at 975. This record indicates a lack of spontaneity to some degree, but not significantly enough to satisfy plain error. *See id.* at 973-75.

[33]    We find the Tenth Circuit's reasoning on this issue to be persuasive. *See Frost*, 684 F.3d at 975. Had Soram objected to the officer's testimony at trial, a case against admissibility could have been made—depending on how the facts were developed. *See id.* But Soram must show the alleged error was plain—that it is "clear or obvious at the time of the appeal." *See id.* (quoting

*United States v. Cordery*, 656 F.3d 1103, 1106 (10th Cir. 2011)); *see also People v. Lessard*, 2019 Guam 10 ¶ 15 n.1 ("An error is plain so long as it is clear or obvious at the time of appellate review."). This he fails to do. The victim's "statements to the officers came when []he was still visibly upset." *See Frost*, 684 F.3d at 975. "Under only slightly different facts, the court's admission of the officers' testimony may have been entirely unproblematic." *See id.*; *see also State v. Fields*, 201 P.3d 586, 606 (Haw. Ct. App. 2005) ("Generally, at trial, absent an objection by the defendant to the hearsay testimony offered by the prosecution, the court lacks sufficient information to decide that its failure to preclude admission of the hearsay testimony into evidence, or to strike it after it has been admitted into evidence, is a plain error."), *aff'd*, 168 P.3d 955 (Haw. 2007).

[34]     We cannot say that the challenged statements were obviously inadmissible, such that the trial court should have excluded the statements even without an objection from Soram. *See Frost*, 684 F.3d at 975; *see also, e.g.*, *People v. Everette*, 49 N.Y.S.3d 443, 445 (App. Div. 2017) (finding victim's declaration at police show-up qualified as an excited utterance). Soram has failed to meet his burden of showing the admission of the challenged statements without objection amounted to plain error.

## C. The Trial Court Did Not Err in Denying Soram's Motion for Judgment of Acquittal while Granting that of His Co-defendant

[35]     Soram argues that granting his co-defendant's motion for judgment of acquittal on the robbery charge while denying Soram's motion essentially amounted to an inconsistent verdict. *See* Appellant's Br. at 18-21. He claims that "once all inadmissible hearsay is disregarded," the only difference in the state of the evidence between the two defendants is that "[Soram] happened to be the one holding the bat" when they were being interviewed by police "at a later time and at a different location." *Id.* at 18. Soram contends it was error for the trial court to rule differently

on the motions because "they should have both been granted or both denied." *Id.* at 19. We find these arguments misplaced.

[36]    The United States Supreme Court has held that even if the acquittal of a co-defendant is logically inconsistent with a defendant's conviction, "that error would not create a constitutional defect in a guilty verdict that is supported by sufficient evidence and is the product of a fair trial." *Harris*, 454 U.S. at 344. Mere inconsistencies in resolving motions for judgments of acquittal "provide no greater grounds for reversal than inconsistent verdicts rendered by a jury." *Cf. United States v. Chilingirian*, 280 F.3d 704, 711 (6th Cir. 2002) (applying this standard to bench trial). Thus, any inconsistency in the trial court's decision is "not a bar to a conviction so long as there is sufficient evidence to support the guilty verdict." *People v. Guerrero*, 2003 Guam 18 ¶ 17 (quoting *People v. Chargualaf*, 2001 Guam 1 ¶ 31); *see also United States v. Johnson*, 561 F.2d 832, 834 n.1 (D.C. Cir. 1977) (affirming guilty verdict despite trial court's grant of co-defendants' motion for judgment of acquittal because the conviction was supported by sufficient evidence); *United States v. Hill*, 313 F. App'x 195, 196 (11th Cir. 2008) (per curiam) (finding trial court's grant of co-defendant's motion for judgment of acquittal was not inconsistent with defendant's conviction because there was sufficient evidence to support jury verdict). Even if Soram's robbery conviction were inconsistent with the trial court's acquittal of his co-defendant on the same charge, we will reverse Soram's robbery conviction only if it is not supported by sufficient evidence.

[37]    Soram cites no law that suggests this court can disregard evidence that was not objected to at trial, was heard by the jury, and is part of the record. He fails to acknowledge that we have repeatedly stated, "[E]rroneously admitted evidence is properly considered in a challenge to the sufficiency of the evidence." *People v. Camacho*, 2016 Guam 37 ¶ 45; *Riosen*, 2023 Guam 23 ¶ 11 n.2; *see also People v. Mendiola*, 2014 Guam 17 ¶ 23. "We do not 'run anew' a sufficiency of the evidence analysis, excluding the improperly admitted evidence from our consideration."

*People v. Mateo*, 2017 Guam 22 ¶ 28 (quoting *Camacho*, 2016 Guam 37 ¶ 45). We find the sufficiency of the evidence supporting the robbery conviction does not rise or fall with the statements made by the victim to the police.

[38]    "To review a claim for insufficiency of the evidence, 'we review the evidence presented at trial in the light most favorable to the People and determine whether any rational trier of fact could have found the essential elements of the crime[] beyond a reasonable doubt." *People v. Quinata*, 2023 Guam 25 ¶ 18 (quoting *People v. Kotto*, 2020 Guam 4 ¶ 29). "The People 'must be afforded the strongest legitimate view of the evidence and all reasonable inferences that may be drawn therefrom.'" *Id.* (quoting *People v. Song*, 2012 Guam 21 ¶ 28). "We are 'concerned with the existence or non-existence of evidence, not its weight, and this standard remains constant even when the People rely exclusively on circumstantial evidence.'" *People v. Sked*, 2023 Guam 26 ¶ 23 (quoting *Martin*, 2018 Guam 7 ¶ 23).

[39]    Soram argues that his "assertion of error on this point is not dependent on this Court agreeing that [his] motion [for judgment of acquittal] should have been granted," Appellant's Br. at 21, but this concession would be fatal to his claim. If there is sufficient evidence, any alleged inconsistency is not a basis to overturn the conviction. Soram does not dispute that a rational jury could infer that because he had the bat when police arrived, he was in possession of the bat during the scuffle with the victim. *See* Appellant's Br. at 19-20. He merely claims that the opposite inference was just as likely. *See* Appellant's Br. at 20 ("Both conclusions rely on an inference as to what happened between the scuffle and the interviews, and no evidence was introduced to suggest either one was more likely than the other."). However, this ignores the rule that "the prosecution's evidence need not rule out every hypothesis other than guilt to be sufficient." *Hosei*, 2023 Guam 22 ¶ 57. "As the jury returned a guilty verdict, it is not the place of the courts 'to resolve conflicts in the evidence, to pass upon the credibility of witnesses, *to determine the*

*plausibility of explanations*, or to weigh the evidence." *Id.* (emphasis added) (quoting *People v. Erwin*, 2019 Guam 20 ¶ 14).

[40]     On appeal, we are only concerned with the "existence or non-existence of evidence" to determine whether any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. *Riosen*, 2023 Guam 23 ¶ 16 (quoting *Rachulap*, 2022 Guam 9 ¶ 12).  As charged under the second-degree robbery statute, the People had to prove that in the course of committing a theft, Soram was armed with or displayed what appeared to be a deadly weapon. *See* 9 GCA § 40.20(a)(3); RA, tab 10 at 1-2 (Indictment).

[41]     There is evidence that an eyewitness saw two men—one of whom had a baseball bat or similar object—scuffle with the victim.  Tr. at 24-26 (Jury Trial, Apr. 13, 2023).  The record also shows that police later arrested Soram, who was found in possession of a baseball bat and a watch that belonged to the victim.  Tr. at 10-13, 55 (Jury Trial, Apr. 13, 2023).  This is more than ample circumstantial evidence to support Soram's robbery conviction. *See People v. Cepeda*, 2021 Guam 9 ¶ 29 ("[We] have consistently held that circumstantial evidence alone is sufficient to submit a matter to the jury and to support a conviction."); *see also Sked*, 2023 Guam 26 ¶ 30.  While another jury might have reached a different conclusion, the question is whether *any* rational jury could have found the elements of second-degree robbery beyond a reasonable doubt on the record before it.  The answer must be yes, and there is sufficient evidence to sustain Soram's robbery conviction.

[42]     We hold that Soram's robbery conviction is supported by sufficient evidence.  Any alleged inconsistency in the trial court's decision on Soram's and his co-defendant's motions for judgment of acquittal is not grounds for reversal.  Additionally, because we find sufficient evidence, we affirm the trial court's decision denying Soram's motion for a judgment of acquittal.

//

//

**D.  We Decline to Reach Soram's Claim of Ineffective Assistance of Counsel**

[43]     The final issue on appeal is whether Soram's right to the effective assistance of counsel was violated.  Soram argues that he received ineffective assistance because his "trial counsel inexplicably conceded during closing argument that Soram possessed the bat during the scuffle." Appellant's Br. at 22.  He claims that "trial counsel's decision to make such a broad, blanket concession as to almost all elements of all charges against [Soram] is, frankly, inexplicable," and that such concessions "cannot be justified by reference to any conceivable trial strategy." *Id.* at 22-23.

[44]     "Although an ineffective assistance of counsel claim may be heard on direct appeal, these claims are typically more appropriately brought on a petition for a writ of habeas corpus, as these claims usually require an 'evidentiary inquiry beyond the official record.'" *Cruz*, 2023 Guam 1 ¶ 7 (quoting *People v. Leon Guerrero*, 2001 Guam 19 ¶ 12).  In our discretion, we will review ineffective assistance claims "if the record is 'sufficiently complete to make a proper finding.'" *Id.* (quoting *People v. Moses*, 2007 Guam 5 ¶ 9).  Generally, when a defendant seeks to challenge trial counsel's strategy as constitutionally deficient, he "would need to establish that the decisions about which he complains were not made for strategic purposes but out of a lack of diligence or for some illegitimate motive." *People v. Damian*, 2016 Guam 8 ¶ 31.  Usually, "[s]uch a finding cannot be gleaned from the record and therefore requires a separate fact-finding proceeding, more appropriately conducted pursuant to a writ of habeas corpus." *Id.*

[45]     "Every criminal case requires choices to be made by the defense regarding which theories are advanced to the exclusion of other possible lines of argument.  Such strategic decisions are presumed to be sound and generally do not amount to ineffective assistance of counsel." *Id.*  Yet there is no "situation more damaging to an accused than to have his own attorney tell the jury that there is no reasonable doubt that his client was the person who committed the conduct that

constituted the crime charged in the indictment." *United States v. Swanson*, 943 F.2d 1070, 1075 (9th Cir. 1991). "[I]n some cases a trial attorney may find it advantageous to his client's interests to concede certain elements of an offense or his guilt of one of several charges." *Id.* at 1075-76. But we agree with the Sixth and Seventh Circuits that "Given the importance of the constitutional rights implicated when guilt is conceded and the ethical obligations of attorneys to consult with their clients, . . . an attorney's concession of a client's guilt without any indication of the client's consent to the strategy is deficient conduct for *Strickland* purposes." *United States v. Holman*, 314 F.3d 837, 843 (7th Cir. 2002) (citing *Wiley v. Sowders*, 647 F.2d 642, 650 (6th Cir. 1981)).

[46]    The record before us does not allow us to determine whether trial counsel intended to concede Soram's guilt on an element of the robbery charge or to the entire charge.[3]  Nor can we glean from the record whether Soram was consulted about such a decision.  Depending on trial counsel's investigation of the law and his client's consent, either choice may have been strategic. Accordingly, we decline to reach the issue here.  If Soram wishes to pursue this claim in a collateral proceeding, he must develop the record further.

## V.  CONCLUSION

[47]    The trial court did not commit plain error in failing to *sua sponte* instruct the jury on the lesser-included offense of third-degree robbery.  There was no rational basis for the jury to

---

[3] Trial counsel is required to perform a reasonable investigation before making a strategic decision, including informing himself on the law. *Hinton v. Alabama*, 571 U.S. 263, 274 (2014) (per curiam) ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." (quoting *Strickland v. Washington*, 466 U.S. 668, 690-91 (1984))).  A decision based on ignorance of the law is not strategic. *Id.* ("An attorney's ignorance of a point of law that is fundamental to his case combined with his failure to perform basic research on that point is a quintessential example of unreasonable performance under *Strickland*.").  The record before us is not sufficiently developed to determine whether trial counsel had adequately informed himself that force was not an element of robbery as charged against Soram.  As discussed above, the elements of second-degree robbery as charged in this case were that Soram possessed or displayed what appeared to be a deadly weapon in the course of committing a theft.  Although the record is not sufficiently developed for us to make a proper finding now, it would have been deficient performance for trial counsel to concede a theft occurred and Soram possessed what appeared to be a deadly weapon under the mistaken belief that he could still be acquitted if the jury found he did not use force.

conclude that Soram committed the robbery but did not display what appeared to be a deadly weapon. Nor did the trial court commit plain error in admitting the complaining witness's out-of-court statements. It was not clear or obvious that the testimony was not admissible as an excited utterance without an objection from Soram.

[48]    The trial court did not err in denying Soram's motion for judgment of acquittal while granting that of his co-defendant. There is sufficient evidence to support Soram's robbery conviction. The trial court did not err in denying his motion. Because the conviction is supported by substantial evidence, any alleged inconsistency in the trial court's decision on the separate motions for judgment of acquittal is not grounds for reversal. Finally, we decline to reach Soram's claim of ineffective assistance of counsel. We **AFFIRM**.


/s/
F. PHILIP CARBULLIDO
Associate Justice

/s/
KATHERINE A. MARAMAN
Associate Justice


/s/
ROBERT J. TORRES
Chief Justice